Elwood KELLER

v.

Irene COYLE, Richard Coyle, Barry Goldstein and Gary A. Friedberg.

Civ. A. No. 78–3892.

United States District Court, E. D. Pennsylvania.

Oct. 14, 1980.

Frederick C. Sturm, Philadelphia, Pa., for plaintiff.

Alan Schwartz, Philadelphia, Pa., for Richard & Irene Coyle.

Carl Weiss, Philadelphia, Pa., for Barry Goldstein and Gary Friedberg.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Elwood Keller, brought this action against all of the defendants under

section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j, and Rule 10b–5, 17 C.F.R. § 240.10b–5.[1] The plaintiff has also asserted a pendent state law claim against the defendants alleging fraud. The complaint alleges that the defendants Richard and Irene Coyle violated section 10(b) and Rule 10b–5, and defrauded the plaintiff, when Richard Coyle made untrue statements to the plaintiff in connection with the plaintiff's purchase from Irene Coyle of all of the stock in a bar that was owned and operated by the Coyles. The defendants Barry Goldstein, Esq. and Gary Friedberg, Esq., attorneys in the same law firm, drafted the agreement of sale and other legal documents in connection with the sale of the bar. The plaintiff alleges that Goldstein and Friedberg aided and abetted the Coyles in connection with the alleged Rule 10b–5 violation and the alleged fraud by: (1) representing both the buyer and the seller in the transaction while members of the same law firm; and (2) representing to the plaintiff that the transaction was fair and reasonable when they knew or had reason to know that the representations were untrue. Both Goldstein and Friedberg have moved for summary judgment. For the reasons hereinafter set forth, their motion will be granted.

> Summary judgment may be granted:
> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

If the affidavits, depositions, other matters of record, and any reasonable inferences therefrom, interpreted in a light most favorable to the plaintiff, who is the non–moving party, reveal the existence of a genuine issue of material fact, the motion for summary judgment must be denied. *Sanford v. O'Neill,* 616 F.2d 92 (3d Cir. 1980); *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir. 1979). In support of their motion, Goldstein and Friedberg have submitted affidavits. The plaintiff has submitted the depositions of Goldstein, Friedberg, and himself in opposition to the motion.

The record shows that the plaintiff and the Coyle defendants had been friends for approximately five years prior to the transaction in question, and that the plaintiff had lent $3000.00 to Richard Coyle in 1975 to start a taxicab business which failed shortly thereafter. In 1977, Richard Coyle asked the plaintiff if he would be interested in buying from his wife, Irene Coyle, all of the stock in the San Francisco East, a bar in Philadelphia. The plaintiff stated in his deposition that he agreed to buy all of Irene Coyle's stock in the San Francisco East after his initial conversation with Richard Coyle, and that his decision to buy the bar was based on the representation made to him by Richard Coyle, who managed the bar, that the bar grossed about $3100.00 per week although, for tax reasons, the books showed only $2200.00 gross income per week.

The plaintiff made a down payment of $5000.00 to the Coyles and executed an agreement of sale drafted by the defendants Goldstein and Friedberg. Under the terms of the agreement, the plaintiff executed a promissory note for the balance of the purchase price. The plaintiff began operating the bar in October of 1977, but defaulted on his note payments to the Coyles after one year and the Coyles repos-

---

1. Rule 10b–5 provides:
    It shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
    (a) To employ any device, scheme, or artifice to defraud,
    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

sessed the bar. The plaintiff stated in his deposition that during the year he operated the bar it never grossed more than $2200.00 per week, and in that period he had to invest an additional $10,000.00 in order to meet operating expenses.

Defendant Goldstein was a partner and defendant Friedberg was an associate in the same law firm. Goldstein received a telephone call from Richard Coyle after the plaintiff had agreed to buy the stock of the San Francisco East from Irene Coyle. Mr. Coyle instructed Goldstein to prepare an agreement of sale setting forth the terms of the agreement between Mrs. Coyle and the plaintiff. Goldstein drafted the agreement of sale and instructed his associate Friedberg to draft a financing statement, security agreement, and a judgment note reflecting the terms of the agreement. The plaintiff stated in his deposition that he did not meet either Goldstein or Friedberg until settlement. The fee for the services provided by Goldstein and Friedberg was paid by the plaintiff. The plaintiff stated that he thought Goldstein and Friedberg were representing the Coyles until Richard Coyle informed him at settlement that he would have to pay the lawyers' fee. Regardless of the uncertainty as to whom Goldstein and Friedberg actually represented, the depositions and uncontroverted affidavits show that they were employed solely to draft documents which set forth the terms of the agreement the parties had negotiated.[2] Neither lawyer was involved in any stage of the negotiations. The plaintiff stated in his deposition that he could not remember anything specific that was said to him by either attorney at settlement except that "they told me the agreement of sale was a good agreement." (Deposition of plaintiff, p. 75).

■ In order to be liable for aiding and abetting a securities violation, the plaintiff has the burden of proving:

(1) that there has been a commission of a wrongful act—an underlying securities vi-

olation; (2) that the alleged aider–abettor had knowledge of that act; and (3) that the aider–abettor knowingly and substantially participated in the wrongdoing. *Monsen v. Consolidated Dressed Beef*, 579 F.2d 793, 799 (3d Cir.), *cert. denied, First Pennsylvania Bank N.A. v. Monsen*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

Our Third Circuit derived this standard from the common law elements of aiding and abetting a fraud, as expressed in section 876(b) of the Restatement of Torts. *Gould v. American–Hawaiian Steamship Co.*, 535 F.2d 761 (3d Cir. 1976); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975). Section 876(b) of the Restatement of Torts states:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself.

Assuming for the purposes of this motion that the Coyles violated Rule 10b–5 and defrauded the plaintiff, we must nevertheless conclude that the second and third elements listed by our Third Circuit in *Monsen* are not present as to Goldstein and Friedberg in this record. Since the absence of either element would be sufficient to bar liability as aiders–abettors, the motion for summary judgment must be granted.

■ The second element listed by the *Monsen* court and section 876(b) is that the alleged aider–abettor must have knowledge of the violation. To satisfy the knowledge requirement,

the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety.... Such involvement may be demonstrated by proof that the alleged aider–abettor had general awareness that his role was part of an overall activity that was im-

---

**2.** Goldstein believed that he was representing both the buyer and seller (Deposition of Goldstein, p. 5), whereas Friedberg believed that he was attending the settlement as the plaintiff's attorney (Deposition of Friedberg, p. 13). In

ruling upon this motion for summary judgment, this Court has not determined whether the Code of Professional Responsibility has been violated.

proper. *Monsen, supra,* at 799. (footnote omitted).

As previously stated, Goldstein and Friedberg only prepared the documents requested by the parties to effectuate the sale of stock. They did not participate at any time in the negotiations between the plaintiff and the Coyles. Their depositions and uncontroverted affidavits state that they never knew of any representation with respect to the profitability of the tavern made to the plaintiff or of any representation by the Coyles to the plaintiff that the gross income of the bar was approximately $3100.00 per week. Goldstein and Friedberg stated that they did not know the weekly gross income of the bar and did not know the "fair and reasonable" selling price of the bar. The plaintiff has not controverted these statements of Goldstein and Friedberg and, in his deposition, stated that Goldstein and Friedberg *never* told him that the gross income of the bar was $3100.00 per week. The plaintiff further stated that "I don't know whether they [Goldstein and Friedberg] had any knowledge of what the bar did." (Deposition of plaintiff, p. 75).

The third element listed by the *Monsen* Court is knowing and substantial participation in the violation. In determining whether the conduct of an alleged aider–abettor constitutes substantial assistance, we must consider four factors listed in comment *d* to section 876(b):

(1) the amount of assistance given by the defendant, (2) his presence or absence at the time of the tort, (3) his relation to . . . [the plaintiff], and (4) his state of mind. *Monsen, supra,* at 800.

The depositions and uncontroverted affidavits of Goldstein and Friedberg state that they never induced the plaintiff to believe any representation as to the profitability of the bar, never advised the plaintiff that the gross income of the bar was $3100.00 per week or any other amount, and never advised the plaintiff that the transaction was fair and reasonable. As pointed out in connection with Goldstein's and Friedberg's denial that they had any knowledge of a Rule 10b–5 violation or fraud by the Coyles, Goldstein and Friedberg did not participate in any of the negotiations, had no knowledge of any representations made by the Coyles, did not know the "fair and reasonable" selling price of the bar, and, as stated by the plaintiff, never told him that the bar grossed $3100.00 per week, which is the thrust of his Rule 10b–5 and fraud allegations.

We therefore conclude that a review of the depositions and affidavits submitted shows that there is no genuine issue of material fact in connection with two of the essential elements necessary to establish that Goldstein and Friedberg aided and abetted the alleged Rule 10b–5 violation and the alleged fraud committed by the Coyles. Under *Monsen* and section 876(b), Goldstein and Friedberg are entitled to judgment as a matter of law with respect to these elements. We will therefore grant the motion of defendants Goldstein and Friedberg for summary judgment.