[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, John Moore ("Moore"), a former employee of defendant National Securities Research Corp. ("National"), commenced this action in February, 1992. In three counts, his complaint seeks damages for wrongful termination, "failure to pay bonus", and unpaid wages.
As pertinent to this motion, the complaint alleges as follows:
National operates and manages a number of separate mutual funds (Complaint, para. 4). Since 1987, Moore worked for National as a Senior Portfolio Manager responsible for investment decisions of two of those funds. (Para. 3). In October, 1990, Moore claims that he "discovered" that a separate, independent fund of National's (the "Bond Fund") — which Moore did not manage — allegedly had bought certain so-called "junk bonds", purportedly in violation of that fund's prospectus (para. 6), and "of the laws regulating the sale and marketing of securities." (para. 10). Moore alleges that he brought this information to the attention of National's compliance officer, who indicated to Moore that she already was aware of the transaction, and had directed that the bonds be sold. (para. 7). When Moore asked if any remedial action was planned to reimburse the investors of the Bond Fund, the compliance officer allegedly replied that National's President had decided that no further action was necessary. (para. 8). Moore then concluded that he "intended to look more fully into the matter to see whether there was a pattern of other violations." (Id.) CT Page 4487
More than a month later, on November 30, 1990, Moore was terminated "for no other alleged reason than that he was `difficult to deal with'." (para. 11). According to Moore, he was told that the termination was not "performance-related." (para. 11). On "information and belief," Moore alleges that he was in fact terminated "in retaliation for his reporting of and continuing investigation into securities law violations." The termination is alleged to be wrongful and "a breach of the covenant of good faith and fair dealing in that it violated the important public policies embodied in the securities laws of the United States." (Id.) Moore seeks unspecified damages for "significant financial loss, emotional distress and anxiety, and mental pain and suffering." National now moves to strike this count of the complaint as legally insufficient.
The defendant recognizes that all facts well pleaded are admitted for the purposes of its motion. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). Its memorandum in support of its motion to dismiss distills to four arguments. They will be addressed seriatim.
A. The plaintiff has failed to allege what public policy interest was obviated by his termination — that is, what is it about terminating someone who threatens to conduct his own investigation to see whether there have been other security violations by his employer in addition to the one he has just discovered and reported to his compliance officer that serves to contravene a clear mandate of public policy?
Clearly, the reason for the termination must contravene an explicity, important public policy; having an incidental effect on public policy is insufficient. Battista v. United Illuminating Co., 10 Conn. App. 486 (1987). As opposed to the plaintiff in Sheets v. Teddy's Frosted Foods, 179 Conn. 471
(1980) who alleged that his knowledge of a variety of violations of the Food, Drug Cosmetic Act and his insistence on his employers compliance with the Act that caused his termination, the plaintiff here has failed to allege within the body of his complaint what laws the defendant here violated.[1] Without this essential allegation, there is no way for the court to assess whether a "`clear mandate of public policy' embodied in a constitutionally or legislatively established prohibition, requirement or privilege" was involved. Smith v. Calgon Carbon Corp, 917 F.2d 1338, 1344 (1980). Its omission is therefore fatal and requires that this court grant the motion to strike. In anticipation, however, of the plaintiff pleading over, this court will address the other points raised in the defendant's motion. CT Page 4488
B. The defendant has also argued that the plaintiff has failed to allege that he had any supervisory authority over the particular Fund to which the alleged SEC violations relate. Although he was not in charge of this particular bond fund, Moore claims in his memorandum in opposition to have had the expertise and corporate responsibility to access and judge the situation. As a result, he stands in a different posture than the employee in Geary v. U.S. Steel Corp., 319 A.2d 174, 181
(1974) which case the Smith court relied upon. In effect, he argues (although not so explicitly) that his is not a case of an employee who had absolutely no responsibility of protecting the public interest but was merely expressing his opinion, (even if it was informed). Id. See also, Smith v. Calgon Carbon Corp., supra at 1345. Where the employee is charged either by law or his employer with the specific responsibility of protecting the public interest and he acts in that role when engaging in the discharge causing conduct, then he may properly bring a cause of action against his employer who has terminated him in retaliation. Id. at 1345.
Paragraph 3 of the complaint sets forth his qualifications and work responsibilities in the securities field that would allow him to assess the alleged improprieties. However, the plaintiff has not set forth his responsibilities as they relate to the particular bond fund in issue. (See Plaintiff's Memorandum in Opposition para. 1.) The defendant claims this omission is fatal. This court considers the defendant's argument to foist a hyper-technical requirement that does not reflect the policy "that notions of `responsibility' and `expertise' must not be overlooked when determining whether a cause of action under the public policy exception should lie." Hays v. Beverly Enterprises, Inc., 766 FS 350 (W.D. Pa. 1991). Moore was hired by the defendant to manage a bond fund. As his complaint sets forth, Moore was a Senior Portfolio Manager responsible for the investment decisions of two of the defendant's mutual funds with combined assets of $410 million. Therefore, although not in charge of the specific bond fund in question, his position of responsibility, authority and expertise in the area provide the umbrella the defendant contends is necessary in order to claim a retaliatory discharge.
C. The defendant alleged that there was no Hobson's choice to which Moore was put, i.e., losing his job or risking criminal prosecution. The only case to which the defendant points even suggesting such a requirement in order to sustain a wrongful discharge claim in the face of an at will contract is Banerjee v. Roberts, 641 F. Sup. 1093 (D. Conn. 1986). (See defendant's memorandum at p. 6, n. 5). This was not the case in Sheets as the dissent points out. Id. at 390, n. 1. Nor was it in Cook v. Alexander Alexander, 40 Conn. Sup. 246, 248-49 (1985); or CT Page 4489 in Ryan v. Watson Enterprises, 5 CSCR 112 (1990). That an employee may be forced to risk engaging in conduct prohibited by law does not establish such a consequence as a prerequisite to a successful wrongful discharge action. Where an employee complies with the law or refuses to violate it, the law itself may serve to establish the public policy component, (Sheets, supra at 480) but there are other ways a public policy can be violated by an employers' retaliatory termination. See Perks v. Firestone Tire Rubber Co., 611 F.2d 1363 (3d Cir. 1979) dismissal for refusal to take polygraph test); and Novosel v. Nationwide Insurance Co., 721 F.2d 894 (3d Cir. 1983) (dismissal for refusal to participate in political lobbying). Risk of criminal prosecution is not an independent requirement, rather it is but one way a clear mandate of public policy can be established. Therefore allegations of a "Hobson's choice" is not a prerequisite.
D. The defendant alleges that Moore failed to report the alleged security violations, either to National's own senior management or to any regulatory authority. As the plaintiff has stated, there is no requirement that the employee actually take the complaint to someone other than his employer.[2] See e.g. Schmidt v. Yardney Electric Co., supra at 73 (disclosure of knowledge of fraud to company's parent corporation); and Sheets v. Teddy's Frosted Foods, Inc., supra (disclosure made in writing to defendant employer). In this case, Moore went to his compliance officer and reported his discovery. He was told that investors would not be made whole, as required. It was only then that he expressed his intention to look further himself into whether or not there was a pattern of other violations.
Moore uncovered two problems, one was the original investment into the junk bond fund, in violation of the prospectus, and the second was the failure to make the investors whole again. Dissatisfied with the responses he received, he cautioned that he would conduct his own investigation. Despite the defendant's argument to the contrary, the defendant's pre-existing knowledge of the allegedly improper purchase of junk bonds, is not fatal to Moore's claim. See e.g. Schmidt v. Yardney Electric Co., supra. To impose a requirement that the supervisor, or appropriate other, be totally ignorant of the problem raised by an employee would encourage falsehood and lead to ridiculous results. Additionally, the person to whom the plaintiff brought his complaint, his compliance officer who directed this fund (Plaintiff's complaint, n. 7), was a proper person to whom complaints and concerns regarding this fund could be voiced. (This despite defendant's argument to the contrary.)
The more poignant question pertains to the threats of investigation which Moore made when he was dissatisfied with the CT Page 4490 responses he got to his "discovery". The defendant argues that this conduct is not deserving of the protection Sheets provides and that no extension of this narrow exception to the principles inherent in an at will contract is warranted. The plaintiff, however, claims this as but one basis for his cause of action. (See Complaint para. 12.)
In his memorandum in opposition at p. 11 Moore summarizes this complaint and the basis for his action.
 First, he has alleged that defendant violated securities laws and regulations by violating the Bond Fund's prospectus and by failing to notify the investors and to make the investors whole for their losses. Second, he has alleged that he complained about this violation, and in particular, about the failure to make the investors whole. Finally, he has alleged that his discharge was in retaliation for his complaints.
However, as his complaint, to which he is confined states: he was terminated in retaliation for both "his reporting of and continuing investigation into securities law violations." Once again, Moore had discovered what he claims (and will probably more specifically articulate in a revised complaint) were securities violations and his employers' failure to take curative action despite its obligations under the law. Such alleged commission and omission provided a sound basis for the plaintiff's concerns about the management of the defendant's funds. His position entitled him (if not obligated him; again, see SEC regulations) to pursue his employers' alleged violations. Whatever mandates of public policy are implicated in his reporting are equally implicated in his attempts as a bond fund manager to investigate the question of whether there have been other violations. The allegations contained in the complaint of discovery and investigation fall squarely within the parameters, narrow or otherwise, of Sheets and its Connecticut progeny.
For the reasons stated above, supra at 4, the motion to strike is granted.[3]
KATZ, J.