Robert W. PERKS, Plaintiff-Appellant,

v.

The FIRESTONE TIRE & RUBBER
COMPANY, Defendant-Appellee.

No. 79–1561.

United States Court of Appeals,
Third Circuit.

Submitted on Briefs Oct. 18, 1979.

Decided Dec. 31, 1979.

Howard M. Snyder, Philips, Curtin & Di-Giacomo; Philadelphia, Pa. and Albert B. Wrigley, Kranzley, Wrigley, Yergey & Daylor, Pottstown, Pa., for plaintiff-appellant.

Martin Wald, Schnader, Harrison, Segal & Lewis; Philadelphia, Pa., for defendant-appellee.

Before GIBBONS and HIGGINBOTH-AM, Circuit Judges, and ZIEGLER, District Judge.*

## OPINION OF THE COURT

ZIEGLER, District Judge.

Plaintiff, Robert W. Perks, was an employee at will of defendant, Firestone Tire & Rubber Company (Firestone) until discharged on January 31, 1977. Plaintiff filed a complaint in the Court of Common Pleas of Montgomery County, Pennsylvania, alleging that the discharge was unlawful because it violated the "clear mandate of public policy" of the Commonwealth of Pennsylvania as articulated in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974).[1] The complaint was removed to a federal forum[2] and the district court entered summary judgment on behalf of Firestone.

Our review of the record indicates the existence of a genuine issue of material fact with respect to the reason for the discharge and therefore we reverse the order of the district court and remand for further proceedings.

Plaintiff was an employee of Firestone for 30 years. He served as a production coordinator for the four years preceding his discharge at Firestone's plant in Pottstown, Pennsylvania. In that capacity, Perks had numerous contacts with a supplier of Firestone, Tri-State Technical Sales Corporation and its representative, G. Joseph Pilotti.

Sometime in 1976, the auditors of Firestone commenced an investigation concerning allegations that certain employees had accepted gratuities from representatives of suppliers. During the investigation, the auditors conducted two interviews of Pilotti. The initial interview occurred on December 28, 1976. Pilotti admitted that he procured prostitutes for employees of Firestone, but did not mention plaintiff.

The second interview occurred on January 4, 1977. Pilotti related that Perks was one of the employees who utilized the services of a prostitute provided by him. On or about November 10, 1977, over 10 months following the discharge of plaintiff, and approximately three months after suit was filed, Pilotti provided further details for the auditors, stating that plaintiff was advised of the availability of prostitutes at a Chem Show in New York, in December, 1975, and later that evening, Perks admitted accepting the offer. At the time of the second interview, these details were not available to Firestone.

The Company, armed with the results of the two interviews with Pilotti, confronted Perks with the allegations. He denied the charges. As a result, plaintiff's supervisor, Carl J. Kleinert, requested that Perks submit to a polygraph examination to verify the denial. According to evidence adduced by Firestone, the polygraph test was requested to "give [Perks] an opportunity to persuade us that his version of what happened at the Chem Show was accurate. . . . [T]he polygraph test was a final chance for Mr. Perks to persuade us otherwise. . . ."[3] Plaintiff refused the gambit and, within one week, he was discharged.

Following discovery, Firestone moved for summary judgment averring that: (1) Perks was an employee at will and subject to discharge at the pleasure of the Company; and (2) plaintiff was terminated for accepting gratuities furnished by a supplier of Firestone in violation of corporate policy. The district court declined to determine

---

* Hon. Donald E. Ziegler, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The complaint also alleged a violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and a claim that Firestone wrongfully withheld severance benefits from plaintiff. In a letter to the district court dated March 19, 1979, plaintiff's counsel withdrew the claim based upon section 301. The claim for severance benefits was then remanded to state court and plaintiff does not challenge the order.

2. 28 U.S.C. § 1441.

3. Record at 147a–149a. (Affidavit of Richard K. Johnson.)

whether a discharge for failure to submit to a polygraph examination is violative of Pennsylvania law. Rather, the court held that, as a matter of law, Perks was discharged for transgressing the Company policy concerning gratuities.

We reverse and hold that: (1) the discharge of an employee at will because of a refusal to submit to a polygraph examination required by an employer gives rise to a cause of action for tortious discharge under Pennsylvania law; and (2) the existence of a genuine issue of material fact concerning the reason for plaintiff's discharge precludes the entry of summary judgment.

Pennsylvania law, which is controlling, traditionally followed the common law doctrine that either party may terminate an employment relationship for any reason when the employment is at will. *See, Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891). This harsh principle came under increasing attack, and various courts began to recognize that the economic relationship between the parties required some modification of the unfettered right to discharge.[4]

The Supreme Court of Pennsylvania reexamined the question in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). In *Geary*, a salesman and an employee at will alleged that he was discharged for notifying the company of serious defects in several products marketed by the company. In affirming the dismissal of the complaint, the court indicated that in some circumstances an employee would have a cause of action for wrongful discharge. The court stated:

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action,

particularly where some recognized facet of public policy is threatened.

. . . . We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.

456 Pa. at 184–185, 319 A.2d at 180.

Relying on this broad language, the Pennsylvania Superior Court recently held that an employee, who is discharged for responding to a notice of jury service, has a cause of action against the employer because the discharge violates a clear mandate of public policy. *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 121 (1978).

The General Assembly of Pennsylvania enacted a relevant statutory provision proscribing the use of polygraph examinations by employers. The Act provides:

A person is guilty of a misdemeanor of the second degree if he requires as a condition for employment or continuation of employment that an employe or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test.

18 Pa.C.S.A. § 7321(a). The purpose of this statute was ably summarized in an analysis of a similar statute by the Supreme Court of New Jersey:

There is no judicial control when an employer subjects his employee to a lie detector test and there is no licensing or other objective method of assuring expertise and safeguard in the administration of the test and the interpretation of its results. Nor is there any assurance of true voluntariness for the economic compulsions are generally such that the em-

---

4.  *See, e. g., Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving on jury against employer's directive); *Monge v. Beeke Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974) (contractural cause of action when employer acts in bad faith, maliciously, or in retaliation by terminating employment at

will); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) (employee dismissed for filing workmen's compensation claim against employer); *Peterman v. International Brotherhood of Teamsters*, 174 Cal. App.2d 184, 344 P.2d 25 (1959) (employee dismissed for refusal to commit perjury).

ployee has no realistic choice. Organized labor groups have often expressed intense hostility to employer requirements that employees submit to polygraph test which they view as improper invasions of their deeply felt rights to personal privacy and to remain free from involuntary self-incrimination.

*State v. Community Distributors, Inc.,* 64 N.J. 479, 317 A.2d 697, 699 (1974).[5]

We are satisfied that Pennsylvania's anti-polygraph statute embodies a "recognized facet of public policy" of the type proscribed by the Pennsylvania courts in *Geary* and *Reuther.* Thus, if Perk's discharge resulted from a refusal to submit to a polygraph examination, a cause of action exists under Pennsylvania law for tortious discharge.

In granting summary judgment, the district court concluded that there is "no record evidence which would support a factual inference that plaintiff was fired for refusing to take a polygraph test."[6] We disagree. The affidavits submitted by Firestone characterized the offer to submit to a polygraph test as a "final chance" to plaintiff. Contrary to the district court's assertion, plaintiff stated in his deposition that the refusal to submit to a polygraph examination may have caused the discharge.[7] More importantly, at the time the auditors confronted plaintiff with Pilotti's allegations, they possessed no other evidence. The corroborating details supplied by Pilotti, which consisted of plaintiff's alleged remarks on the evening in question, were procured subsequent to Perk's discharge. From this evidence, it can be inferred that Firestone gave undue consideration to plaintiff's refusal to take a polygraph test, and used that refusal as the basis for the discharge.

Firestone contends that the discharge was based on plaintiff's acceptance of gratuities from a representative of a supplier in violation of corporate policy. It correctly points out that, even when an important public policy is involved, "an employer may discharge an employee if he has a separate, plausible, and legitimate reason for doing so." *Reuther v. Fowler & Williams, Inc., supra,* 386 A.2d at 122. However, as the *Reuther* court emphasized, when the fact-finder can infer one conclusion which violates public policy and one which is plausible and legitimate, invasion of the jury's province is improper. *Id.* While the district court believed that the conflicting evidence weighed heavily in Firestone's favor, "a motion for summary judgment should not be granted on the ground that if a verdict were rendered for the adverse party the court should set it aside as against the weight of the evidence." *Rosenthal v. Rizzo,* 555 F.2d 390, 394 (3d Cir. 1977); 6 J. Moore, Federal Practice ¶ 56.–04[2], at 2067 (2d ed. 1976).

Accordingly, we conclude that the district court erred in finding an absence of a genuine issue of material fact regarding the reason for plaintiff's discharge. The judgment of the district will be reversed and the case remanded for further proceedings.[8]

---

5. Our research has failed to produce any discernible legislative history regarding the Pennsylvania statute. A commentator on these statutes has noted:

    While most states merely prohibit the use of the described test in the employment context, some have made such use a misdemeanor. Many of the prohibitory states have established penalties including a fine or imprisonment or both. It is of course possible that in those states prohibiting required submission to polygraph testing a court might infer a legislative intent to create civil liability on the part of an employer to an employee or prospective employee in any case where testing was used. Even though actual damages in such a case would probably be speculative, a court might award punitive or general damages as well. It is true, however, that there are no reported cases imposing such civil liability.
    Herman, *Privacy, The Prospective Employee, and Employment Testing: The Need to Restruct Polygraph and Personality Testing:* 47 Wash.L.Rev. 73, 99 (1972).

6. Record at 156a.

7. Record at 37a.

8. Plaintiff raises for the first time on appeal the issue of the absence of diversity jurisdiction. This claim lacks merits. Firestone's removal petition states that plaintiff and defendant are

"citizens of different states." Moreover, Perk's complaint alleges facts that establish diversity of citizenship. In order to foreclose any dispute regarding jurisdiction, Firestone seeks leave of this court to amend its removal petition. The proposed amendment sets forth averments which clearly establish diversity jurisdiction. Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See, Wymard v. McCloskey & Co.*, 342 F.2d 495 (3d Cir.), *cert. denied*, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965). However, we conclude that consideration of the motion is unnecessary in view of the jurisdictional facts of record.