**Hazel RETTINGER, Plaintiff,**

v.

**AMERICAN CAN COMPANY, Defendant.**

**Civ. A. No. 82–0547.**

United States District Court, M.D. Pennsylvania.

Sept. 2, 1983.

As Amended Sept. 9, 1983.

Richard H. Wix, Wix, Wenger & Weidner, Harrisburg, Pa., for plaintiff.

William J. Flannery, Morgan, Lewis & Bockius, Harrisburg, Pa., for defendant.

MEMORANDUM

RAMBO, District Judge.

Plaintiff Rettinger originally brought this action in the Court of Common Pleas, Dauphin County, Pennsylvania, seeking

damages from defendant American Can Company for alleged wrongful discharge of plaintiff following her filing of a claim under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 *et seq.* Defendant removed the case to this court pursuant to 28 U.S.C. § 1441(a). Before the court is defendant's motion to dismiss supported by affidavits, transcripts and other material, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(b). The court will deny defendant's motion in part and reserve judgment in part.

I. *Background*

According to the facts set forth in the complaint and supporting documents which are taken as true for purposes of this motion with all inferences viewed in the light most favorable to plaintiff, *Goodman v. Mead Johnson & Co.*, 534 F.2d 556, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), plaintiff began her employment with defendant in 1952 grading and gauging tin plate (i.e. a plate sorter). Plaintiff worked at this job for twenty-six years and as a result, developed degenerative arthritis of both hands. On February 13, 1978 plaintiff advised defendant of her condition and her inability to perform her job as a plate sorter. Plaintiff underwent surgery on her right hand in May of 1978 and February of 1979. Plaintiff filed a workmen's compensation claim on or about February 7, 1979 which was granted on June 16, 1981. In March of 1980 plaintiff submitted to an examination by orthopedic surgeon Joseph Danyo, M.D. at the request of defendant. Dr. Danyo advised defendant that, among other things, if plaintiff returned to her previous employment, her arthritic condition would continue or become aggravated. In July 1980 defendant offered plaintiff a job as a plate classifier which plaintiff attempted but was unable to perform because of the physical condition of her hands. On July 30, 1980 plaintiff's physician, Dr. Stanley Gordon, wrote a report, a copy of which was sent to defendant in the summer of 1980, stating that plaintiff should not be working as a plate classifier. On December 9, 1980, defendant directed plaintiff to report to work on January 5, 1981 as a plate classifier. Plaintiff's counsel advised defendant on or before January 5, 1981 that plaintiff would not report for work as a plate classifier, citing Dr. Gordon's report. Defendant fired plaintiff on January 12, 1981 for not working as a plate classifier. In June 1981 plaintiff received workman's compensation benefits and thereafter sought reinstatement with defendant. Defendant refused to reinstate plaintiff.

Defendant argues that as a matter of fact and law plaintiff has failed to state a claim for which relief may be granted. In its first argument defendant maintains that plaintiff was not fired for filing a workmen's compensation claim. Rather defendant claims that plaintiff voluntarily terminated her employment by failing to report for work as a plate classifier within five working days after receiving directions to do so without providing a satisfactory explanation. Defendant finds that plaintiff admits in paragraph seventeen of the complaint that her refusal to work as a plate classifier resulted in her termination. Defendant maintains that an employer is not obligated to continue the employment of an individual who refuses to work and that nothing in the Workmen's Compensation Act prohibits such a discharge. From defendant's perspective, plaintiff has failed to factually state a claim upon which relief can be granted.

In its second argument defendant contends that plaintiff has failed as a matter of law to state a claim upon which relief can be granted. Defendant asserts that the Pennsylvania General Assembly failed to include a remedy within the Pennsylvania Workmen's Compensation Act for wrongful discharge in retaliation for filing a workmen's compensation claim. Defendant contends that this absence indicates the legislature's intention not to create such a cause of action. Defendant further argues that the courts of Pennsylvania have not recognized such a cause of action. Defendant cites *O'Neill v. A.R.A. Services, Inc.*, 457 F.Supp. 182 (E.D.Pa.1978) for the prop-

osition that in general the Pennsylvania courts do not recognize a cause of action for wrongful discharge and that in the absence of a statutory or contractual provision, an employer's right to hire and fire is virtually absolute. Defendant acknowledges that the Pennsylvania Supreme Court stated in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) that when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge. Defendant argues, however, that *Geary* also held that where the complaint discloses a plausible and legitimate reason for terminating an at-will employee which does not violate a clear mandate of public policy, an employee-at-will has no cause of action for wrongful discharge. Applying the two-part *Geary* analysis, defendant contends that plaintiff's refusal to work in her assigned position as a plate classifier was a legitimate, plausible reason for her termination for which there is no statutory or public policy prohibition.

Plaintiff stated in her opposing brief that she had filed an affidavit averring that she would produce evidence establishing that defendant had other jobs available that it could have assigned to her but which it refused to do. Plaintiff also states in her brief that her affidavit indicates she will produce evidence establishing that defendant had a policy of placing injured employees who were incapable of performing their regular jobs on inactive status so they could continue their eligibility for certain benefits. Plaintiff contends that defendant knew of the problems surrounding her performance of the plate classifier job based on two medical reports yet defendant still directed plaintiff to report for the classifier job. Plaintiff argues that defendant acted with improper motives in assigning plaintiff to a job it knew would be detrimental to her health and then terminating her as an example to others.

Plaintiff also contends that the Pennsylvania courts would recognize a cause of action for retaliatory discharge for filing a workmen's compensation claim.

*Discussion*

**A. Summary Judgment Standards**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party, in this case defendant, has the burden of demonstrating the absence of a genuine issue as to any material fact. *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir.1951). Further, in considering defendant's motion, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The court will first address defendant's contention that Pennsylvania courts have refused to recognize a cause of action for wrongful discharge in retaliation for filing a workmen's compensation claim.

**B. Pennsylvania Law on Wrongful Discharges**

At least since 1891, the established common law of Pennsylvania held that, in the absence of a specific statutory or contractual restriction, an at-will employment contract could be terminated by either the employer or the employee at any time, for good reason, bad reason, or no reason at all. *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891). The state courts began to reevaluate this position in 1974 when the Pennsylvania Supreme Court decided the landmark case of *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974). In *Geary*, an employee of U.S. Steel was allegedly dismissed in retaliation for advising his superiors about the inadequate testing of and serious danger created by one of the

company's new products, which U.S. Steel subsequently withdrew from the market. The employee alleged his discharge under these circumstances was wrongful, malicious and abusive. Although the court sustained the lower court's dismissal of plaintiff's suit, the court acknowledged in dicta the possible existence of a nonstatutory cause of action for wrongful discharge:

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, *particularly where some recognized* facet of public *policy is threatened.* The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship *and no clear mandate of public policy is violated thereby,* an employee at will has no right of action against his employer for wrongful discharge.

456 Pa. at 184, 319 A.2d at 180 (footnote omitted) (emphasis added).

■ In light of *Geary,* it is now well settled in Pennsylvania that, "when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge." *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611, 617 (1980). *Accord, Reuther v. Fowler and Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631, 633 (1980).

■ This court, sitting in diversity, is constrained by the requirement that in diversity cases "a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which

inform the prior adjudications by the state courts." *Becker v. Interstate Properties,* 569 F.2d 1203, 1206 (3d Cir.1977) (footnote omitted), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In predicting whether the Pennsylvania courts would interpret *Geary* and its progeny so as to find a cause of action in the circumstances at bar, this court is aided by a thoughtful opinion filed by Judge Wettick of the Court of Common Pleas of Allegheny County in *Butler v. Negley House, Inc.,* 20 D & C 3d 543 (1981). In that case plaintiff sought damages from defendant for refusing to allow plaintiff to resume her employment for approximately one year following a period of disability arising from an occupational injury. Plaintiff alleged in a trespass count that defendant refused to rehire her in retaliation for filing a workmen's compensation claim. In denying defendant's demurrer to the trespass count, Judge Wettick addressed the same arguments asserted by defendant in the present case: the Workmen's Compensation Act contains no provisions protecting an employee from retaliatory action; the common law of Pennsylvania recognizes no cause of action for such a claim. Judge Wettick first examined the Workmen's Compensation Act and found that it is:

humanitarian legislation which should be broadly construed to protect the employee. *Workmen's Compensation Appeal Board v. Overmyer Mold Company,* 473 Pa. 369, 374 A.2d 689 (1977); *Plasteel Products Corp. v. Workmen's Compensation Appeal Board,* 32 Pa.Cmwlth. 405, 379 A.2d 908 (1977). The purpose of this Act is to provide financial protection to employees injured in the course of their employment by requiring the employer to compensate an injured employee regardless of fault. In enacting this legislation, the Legislature recognized that the employer possessed superior bargaining power and thus included numerous provisions designed to prevent the employer from exercising this bargaining power to deprive employees of

the benefits which this legislation was intended to provide.

. . . . .

These provisions show that the Legislature recognized that employers may attempt to use their superior bargaining position to prevent injured employees from receiving the benefits provided by the Workmen's Compensation Act and they express a clear legislative policy in favor of protecting employees from these efforts. To promote the public policy of this state as expressed in this legislation, the case law must recognize a claim based on a retaliatory action taken against an employee for filing a workmen's compensation claim.

*Id.* at 549–50.

Judge Wettick then noted that the case law in other jurisdictions is divided regarding the availability of a remedy for retaliatory discharge following the filing of a Workmen's Compensation Claim. (*See* Annot., 63 A.L.R.3d 979 (1975)).[1] He found that the cases upholding such a claim conclude that the public policy expressed in workmen's compensation legislation of providing benefits to injured employees would be frustrated by retaliatory discharges. The cases denying the availability of a claim conclude that the issue is one for the legislatures and not the courts.

Judge Wettick rejected the rationale of the cases denying the availability of a remedy for retaliatory discharge. He stated that:

First, the argument that only the legislature may create a remedy for a wrongful discharge has been rejected by the appellate courts of this state. "Recently, ... Pennsylvania has joined the growing list of states recognizing that when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for

wrongful discharge" (footnote omitted). *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super., at 571, 422 A.2d at 616–7. Where a discharge violates the clear mandate of public policy, an action for wrongful discharge lies in trespass. *Reuther v. Fowler & Williams, Inc.*

Second, we find no basis for concluding that the omission in the Workmen's Compensation Act of a remedy for retaliatory action shows a lack of intent on the part of the legislature to create a right of recovery. As we previously stated, the Workmen's Compensation Act is a comprehensive scheme to provide benefits to injured employees. This scheme would be seriously undermined if employers may threaten to discharge employees for seeking benefits under the Act because many employees would give up their workmen's compensation claims in order to avoid jeopardizing their job. This result would effectively relieve the employer of the responsibilities expressly placed upon it by the Workmen's Compensation Act. Such a result is completely contrary to the desires of the legislature reflected in the numerous provisions within the Workmen's Compensation Act designed to bar an employer from utilizing its superior bargaining position to avoid its responsibilities under the Act.

*Id.,* at 552–53.

■ The opinion of Judge Wettick sitting in a lower state court is entitled to "some weight" although the decision is not controlling when the highest court of the state has not spoken on the point. *Commission v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). This court believes the Pennsylvania Supreme Court would agree with Judge Wettick's decision for several reasons. First, even though *Geary* has been interpreted as signalling "a narrow rather than an expan-

---

**1.** Illustrative of the cases upholding such a claim are: *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976). Illustrative of cases denying such a claim are: *Kelly v. Mississippi Valley Gas Co.,*

397 So.2d 874 (1981); *Dockery v. Lampart Table Co.,* 36 N.C.App. 293, 244 S.E.2d 272, *cert. denied,* 295 N.C. 465, 246 S.E.2d 215 (1978); *Loucks v. Star City Glass Co.,* 551 F.2d 745 (7th Cir.1977) (applying Illinois law).

sive interpretation of the public policy exception," *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982), it appears to this court that *Geary* itself recognized in dicta a public policy exception for the retaliatory discharge at issue here. In a lengthy footnote, the *Geary* court cited three cases in which causes of action for retaliatory discharges were recognized. One of the cited cases was the Supreme Court of Indiana's decision in *Frampton v. Central Indiana Gas Co.*, in which an employee who was discharged because she filed a workmen's compensation claim was found to have a non-statutory cause of action. The *Geary* court stated in reference to the three cited cases that "In each case where a cause of action was found, *the mandates of public policy were clear and compelling ...*" 456 Pa. at 184, 319 A.2d at 180 (emphasis added). This court finds this statement extremely significant in indicating how the Pennsylvania Supreme Court would view the issue at bar.

Second, there appears to be no statutory remedy available for a plaintiff seeking to vindicate an alleged retaliatory discharge following the filing of a workmen's compensation claim. Although *Geary* declined to define the perimeters of its public policy exception, subsequent cases have interpreted *Geary* as recognizing a cause of action for wrongful discharge only in the absence of a statutory remedy and only when important and well recognized facets of public policy were at stake. For example, in *Bruffett* the Third Circuit affirmed a district court order dismissing a complaint alleging a common law right of action for discharge and failure to hire on the basis of a handicap or disability. The Third Circuit found that Pennsylvania courts would not recognize such an action because the remedy for the alleged discrimination was found within the Pennsylvania Human Relations Act, Pa.Stat.Ann.Tit. 43 § 951 *et seq.* (Purdon 1964 & Supp.1982). In contrast, *Reuther, Hunter* and *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3 Cir. 1979) all recognized causes of action in involved situations in which there were no statutory remedies available to vindicate

the important public policies threatened by the employer's action. In *Reuther*, the Pennsylvania Superior Court recognized a common law action for an employee who was allegedly discharged for taking time off to serve on jury duty. In *Hunter*, the Pennsylvania Superior Court held that allegations that an applicant was refused employment due to a pardoned conviction in violation of the state constitution stated a cause of action. In neither case was there any statutory remedy to vindicate the important public policy implicated. In *Perks*, the Third Circuit held that an employee terminated after refusing to take a polygraph test could sue for tortious discharge because Pennsylvania's anti-polygraph statute embodied "a recognized facet of public policy." 611 F.2d at 1366. Again, the Pennsylvania statute prohibiting such action did not create any statutory remedy. In the instant case the parties have pointed to no remedy within the Workmen's Compensation Act itself for retaliatory discharge.

■ Based upon *Geary's* recognition albeit in dicta, of the clear mandate of public policy involved in a retaliatory discharge for filing a Workmen's Compensation Claim as well as the important policies served by the Pennsylvania Workmen's Compensation statute discussed by Judge Wettick and the absence of a statutory cause of action for such an alleged discharge, this court concludes that the Pennsylvania courts would recognize a common law cause of action for such a discharge. Accordingly, the court rejects defendant's arguments that as a matter of law plaintiff has failed to state a claim for relief.

C. Plaintiff's Statement of a Claim on a Factual Basis

■ Defendant argues in its brief that plaintiff has failed as a factual matter to state a claim for relief by incongruously alleging on the one hand that she was fired for failing to work as a plate classifier while claiming on the other hand that her firing was in retaliation for filing a workmen's compensation claim. Defendant's

brief was accompanied by affidavits averring that plaintiff was viewed to have voluntarily terminated her employment with defendant by failing to report for work for five working days without providing a satisfactory explanation for such action.

Plaintiff filed a brief in opposition to defendant's motion in which she stated that she had filed an affidavit indicating that she will produce evidence in support of the statements set forth in her request for admissions of facts sent to defendant. No such affidavit has been filed in this case.

Federal Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his responses, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Despite plaintiff's failure to file an opposing affidavit under Rule 56(e) and to request relief under Rule 56(f),[2] there has been no allegation that such failure resulted from lack of good faith or diligence. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2740 (1983). Therefore, it appears to be within the court's discretion to grant plaintiff an opportunity to file the affidavit which she indicates was filed. *Id.* The court has also based its decision to grant the continuance on the fact that Rule 56(e) states that summary judgment *if appropriate,* shall be entered, if the adverse party does not respond with affidavits or other evidentiary matter. This sentence has been interpreted as requiring the court to determine if genuine issues of fact exist from a search of the record even though a motion for summary judgment is unopposed by factual material. 10 C. Wright, Miller & Kane, § 2739; *Higgins v. Baker,* 309 F.Supp. 635, 639 (D.N.Y.1970).

It appears from the record thus far filed that there is a genuine issue of material fact as to the grounds for plaintiff's dismissal. Reading the complaint in its entirety, without focusing solely on paragraph seventeen, the court construes it as alleging that defendant assigned plaintiff to a job which defendant knew plaintiff could not perform after she filed a workmen's compensation claim. Defendant then allegedly terminated plaintiff when she refused to perform the job, all in retaliation for filing her claim. Defendant contends that its decisions regarding plaintiff's job reassignment and job termination were in no way based upon plaintiff's filing of a workmen's compensation claim. Although defendant offers affidavits averring that plaintiff's termination was based solely on plaintiff's failure to report for work, these affidavits do not preclude a jury's finding of a contrary motive. Where a fact finder can infer one conclusion for an employee's discharge which violates public policy and one which is plausible and legitimate, invasion of the jury's province is improper. *Perks,* 611 F.2d at 1366. It appears that plaintiff should have an opportunity to file her affidavit to clarify if disputed material facts exist. Defendant will be given an opportunity to respond to plaintiff's affidavit. Therefore, the court will reserve final judgment on that part of defendant's motion which alleges plaintiff has failed to state a claim as a matter of fact. An appropriate order will be issued.

2. Rule 56(f) provides:
    (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.