**John BURNS**

v.

**UNITED PARCEL SERVICE, INC.**

**Civ. A. No. 89–8758.**

United States District Court,
E.D. Pennsylvania.

Jan. 28, 1991.

Hyman Lovitz, Sidney L. Gold, Lovitz and Gold P.C., Philadelphia, Pa., for plaintiff.

Gary M. Tocci, Martin Wald, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are defendant United Parcel Service, Inc.'s ("UPS") Motion for Summary Judgment, plaintiff John Burns' ("Burns") response, and UPS's reply. For the following reasons, the defendant's Motion is DENIED.

### I. BACKGROUND

Burns commenced this wrongful discharge action on December 8, 1989 arising out of the termination of his employment with UPS. Burns alleges that he was terminated in retaliation for filing a worker's compensation claim and that said termination was in violation public policy. Burns seeks compensatory and punitive damages, reinstatement, back and front pay, interest and attorney's fees. Jurisdiction is asserted under 28 U.S.C. § 1332.

By motion dated February 15, 1990, UPS moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). UPS maintained that no cause of action existed under Pennsylvania law for retaliatory discharge of an at-will employee for bringing a worker's compensation claim. Alternatively, UPS argued that Burns' claim was barred by the exclusivity provisions of the Pennsylvania's Workmen's Compensation Act, Pa.Stat. Ann. title 77, § 481(a) (Purdon Supp.1990) and that there was no entitlement to backpay. By Memorandum and Order dated March 20, 1990, the Honorable Charles R. Weiner, Judge, United States District Court for the Eastern District of Pennsylvania, denied UPS's motion to dismiss with leave to renew after the close of discovery. The court held that "[g]iven the public policy exception to the at-will doctrine, slim though it may be, we cannot say at this stage of the proceedings that the plaintiff can state no set of facts upon which a claim may be stated." (Memorandum dated March 20, 1990 at 2–3, Weiner, J., Document # 6).

The instant motion for summary judgment was filed November 7, 1990. Burns filed his response on November 19, 1990 and UPS replied on November 21, 1990.

## II. UNDISPUTED FACTS

Burns is an individual residing in Philadelphia, Pennsylvania. UPS is a Connecticut corporation with its principal place of business in Greenwich, Connecticut. UPS maintains a place of business in Philadelphia. Burns began his employment with UPS in July, 1970. Burns submitted two employee accident reports dated November 18, 1987. One claim was for a back injury suffered on November 17, 1987 when he slipped on a floor at UPS's Philadelphia facility. Burns' other claim was for job-related stress, chest pains, headaches, vision problems and stomach disorders, which were alleged to have resulted from continued harassment and threats by Division Manager, John Duncan. The report identified John Foley, District Manager and John Duncan as witnesses.

On November 18, 1987, Burns commenced a medical leave of absence. Burns filed two separate workmen's compensation claims for these same injuries.[1] UPS subsequently offered Burns the opportunity to return to his former position. Burns refused to do so citing his back and stress related ailments. Burns was terminated from his employment on February 8, 1988. At the time of his termination, Burns held the position of Area Manager, Preload at UPS's South Philadelphia facility. Burns had no written contract of employment with UPS.

## III. DISCUSSION

### A. *Standard*

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). When considering a motion for summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, this Court should resolve all reasonable doubts and inferences in favor of the nonmoving party. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988).

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.*

The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

The court in *Celotex* elaborated on the type of evidence that the nonmoving party is required to adduce in order to withstand a motion for summary judgment:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously,

---

1. According to UPS, Burns filed his workmen's compensation claims on or about December 10, 1987. (Brief In Support of Summary Judgment at 4, Document # 12). UPS, however, has failed to supply any documentation establishing the approximate or actual date the claims were filed.

Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred [a genuine issue of material fact].

*Id.*

B. *Maintenance of Wrongful Discharge Claim*

 UPS contends that Burns' claim is not cognizable in that Pennsylvania does not recognize wrongful discharge actions where an at-will employee has been terminated in retaliation for filing worker's compensation claim. A federal court sitting in diversity is bound to follow the substantive law of the forum state as expressed by its highest court. *See Commercial Union Ins. Co. v. Bituminous Cas. Corp.*, 851 F.2d 98, 100 (3d Cir.1988); *Whitmore v. Bobst Group, Inc.*, 668 F.Supp. 421, 424 (E.D.Pa.1987) (citing *Connecticut Mut. Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983)). Since this issue has not been addressed by the Pennsylvania Supreme Court of the Superior Court, this Court's task is to "predict the position which that court would take in resolving this dispute." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 364 (3d Cir.1990); *see also Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 23–24 (3d Cir.1986).

"Under Pennsylvania law, it is an established general principal that in an employment relationship, an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'" *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341 (3d Cir.1990) (citing *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891); *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989)). Since *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), however, Pennsylvania law has been interpreted to permit a "wrongful discharge tort for dis-charges that violate a clear mandate of public policy." *Smith v. Calgon Carbon Corp.*, 917 F.2d at 1343 (citations omitted).

The public policy exception to the employee at-will doctrine in Pennsylvania has been interpreted narrowly. *Smith v. Calgon Carbon Corp.*, 917 F.2d at 1343 (citing *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982); *Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170, 1179 (1989)); *see also Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (Pa.1990) (citing *Clay v. Advanced Computer Applications*, 559 A.2d at 918)). The Third Circuit in *Smith* observed that the Pennsylvania Superior Court has only found a cause of action to exist in three cases. *Smith v. Calgon Carbon, Corp.*, 917 F.2d at 1343 (citing *Field v. Philadelphia Elec. Co.*, 565 A.2d at 1170) (employee, hired by expert in nuclear safety, discharged for making statutorily required report), *Hunter v. Port Auth. of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980) (denial of employment to pardoned individual because of his assault conviction violates public policy embodied in Article I, section I of the Pennsylvania Constitution); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (termination for absence due to jury duty). Instead of defining the parameters of the public policy exception, courts have been shaping the exception on a case-by-case basis. *Smith v. Calgon Carbon Corp.*, 917 F.2d at 1344 (citations omitted).

*Butler v. Negley House, Inc.*, 20 Pa.D. & C.3d 543, 129 Pa.L.J. 350 (Court of Common Pleas, Allegheny Cty.1981) (Wettick, J.), appears to have been the first reported Pennsylvania court decision to explicitly recognize a common law wrongful discharge for retaliatory action taken in response to an employee's filing of a workmen's compensation claim. In *Butler*, the defendant asserted that no such action existed because the Pennsylvania Workmen's Compensation Act did not contain provisions protecting employees from retaliatory action and that absent a statute or contract to the contrary, an employer could terminate an employee for any reason. This

argument, however, was rejected. The court held that the Workmen's Compensation Act was "humanitarian legislation" intended to provide protection to employees injured in the course of their employment by requiring the employer to compensate an injured employee regardless of fault. 20 Pa.D. & C.3d at 549–550. Citing to provisions of the Act, it was apparent to the court that the "legislature recognized that employers may use their superior bargaining position to prevent injured employees from receiving benefits provided by the Workmen's Compensation Act and they express a clear legislative policy in favor or protecting employees from these efforts." 20 Pa.C. & D.3d at 551. Accordingly, the court held that to "promote the public policy of [the Act] as expressed in [the] legislation, the case law must recognize a claim based on a retaliatory action taken against an employee for filing a workmen's compensation claim." *Id.*

Following *Butler* was *Rettinger v. American Can Co.*, 574 F.Supp. 306 (M.D. Pa.1983). In addition to Butler, the district court cited two other reasons compelling the conclusion that a cause of action for wrongful discharge in retaliation for filing a workmen's compensation claim existed under Pennsylvania common law. First, the court observed that in *Geary v. United States Steel Corp.*, 319 A.2d at 174, the court in dictum appeared to recognize the public policy exception for such retaliatory discharges.[2] 574 F.Supp. at 311. Second, the court observed that there was no remedy within the Workmen's Compensation Act itself for retaliatory discharge. *Id.* at 311. *Accord Reuther v. Fowler & Williams, Inc.*, 386 A.2d at 119 (applying public policy exception where no statutory remedies are available).

In line with *Butler* and *Rettinger*, the federal courts which have addressed the issue have overwhelmingly held that Pennsylvania recognizes wrongful discharge actions where an employee has been terminated allegedly in retaliation for filing a claim for workmen's compensation benefits. *James v. International Business Machines Corp.*, 737 F.Supp. 1420, 1428 and n. 6 (E.D.Pa.1990); *Aquino v. Sommer Maid Creamery, Inc.*, 657 F.Supp. 208, 212 (E.D.Pa.1987); *Alexander v. Red Star Express Lines of Auburn, Inc.*, 646 F.Supp. 672, 678 (E.D.Pa.1986), *aff'd without op.*, 813 F.2d 396 (3d Cir.1987); *Galbraith v. Phillips Information Sys.*, No. 83–6118, slip op., 1986 WL 6536 (E.D.Pa. June 10, 1986); *Michelson v. Exxon Research and Eng'g Co.*, 629 F.Supp. 418, 426 (W.D.Pa. 1986), *aff'd*, 808 F.2d 1005 (3d cir. 1987); *see also Hickey v. Prudential Property & Cas. Ins. Co.*, No. 89–3426, slip op. at 3, 1990 WL 106641 (E.D.Pa. July 24, 1990) ("I assume, without deciding, that plaintiff would have a claim under Pennsylvania law if he could establish that he was discharged in retaliation for filing a workmen's compensation claim").

UPS, however, directs the Court to decisions of the Court of Common Pleas holding that a cause of action for retaliatory discharge of an at-will employee does not exist under Pennsylvania law. In *Lefever v. Lancaster Leaf Tobacco Co.*, 46 Pa.D. & C.3d 421 (Court of Common Pleas, Lancaster Cty.1987) (Georgelis, J.), the court held that if such a remedy were to made available it should be done by the legislature and, if not, by Pennsylvania appellate courts. 46 Pa.D. & C.3d at 428–29. The *Lefever* court also declined the invitation to follow *Butler* and *Rettinger* stating that those decisions were not controlling. 46 Pa.D. & C.3d at 429. Finally, the court in *Lefever* reiterated the reluctance of Pennsylvania courts to allow recovery based upon novel theories of public policy. *Id.* at 429–430. Similarly, in *Dietz v. Round Hill*

---

**2.** In *Geary*, the court cited *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), as one of three cases where retaliatory discharges were recognized. In *Frampton*, an employee discharged for filing a workmen's compensation claim was found to have a nonstatutory cause of action. In reference to *Frampton*, the *Geary* court stated that "[i]n each case where a cause of action was found, the mandates of public policy were clear and compelling ..." *Geary v. United States Steel Corp.*, 319 A.2d at 180. The court in *Rettinger* found this statement "extremely significant" in indicating how the Pennsylvania Supreme Court would view the issue. 574 F.Supp. at 311.

*Foods, Inc.*, 49 Pa.D. & C.3d 222 (Court of Common Pleas, Adams Cty.1987) (Kuhn, J.), the court refused to recognize such a common law right of action, deferring instead to the legislature. 49 Pa.C. & D.3d at 240. The *Dietz* court also relied on *Berube v. Ski Roundtop, Inc.*, 25 Adams Legal J. 163 (1983) (Spicer, J.). In *Berube*, the court concluded that the public policy favoring an employee's right to apply for workmen's compensation benefits was not sufficiently strong to warrant protection by a wrongful discharge action. 25 Adams Legal J. at 166–67. More recently, in *Tawney v. Round Hill Foods*, 30 Adams Legal J. 88 (Court of Common Pleas, Adams Cty. 1988) (Kuhn, J.), the court, relying on *Dietz*, dismissed plaintiff's tort action asserting that she was discharged to avoid a workmen's compensation claim.

*Tawney, Dietz, Lefever* and *Berube* while probative of Pennsylvania law are not dispositive. While the opinions of lower state courts are entitled to "some weight," such decisions are not controlling where the highest state court has not spoken on that point. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 272 (3d Cir.1985), *aff'd*, 812 F.2d 81 (3d Cir.1987) (although lower state court decisions are not controlling on issue to which highest state court has not spoken, federal court should accord significant weight to such decisions in the absence of any indication that the highest court would rule otherwise); *A.J. Cunningham Packing v. Congress Fin. Corp.*, 611 F.Supp. 532, 533–34 (W.D.Pa.1985), *rev'd on other grounds*, 792 F.2d 330 (3d Cir.1986) (citations omitted) (court must accord the decisional law of lower state courts "proper regard" but not conclusive effect). This Court is inclined to agree with the line of cases which acknowledge wrongful discharge claims where an employee has been terminated for seeking workmen's compensation benefits as existing under Pennsylvania law. *See, e.g., James v. International Business Machines Corp.*, 737 F.Supp. at 1428 and n. 6.

Further, the well-reasoned decisions of intermediate state appellate courts are entitled to greater weight than those of lower state courts. *See Bednarski v. Hideout Homes & Realty, Inc., Div. of U.S. & Properties, Inc.*, 709 F.Supp. 90, 93 (M.D. Pa.1988) (citing *General Elec. Corp. of Tennessee v. Ger–Beck Machine Co., Inc.*, 806 F.2d 1207 (3d Cir.1986); *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985)); *Apicella v. Valley Forge Military Academy and Junior College*, 630 F.Supp. 20, 22 (E.D.Pa.1985) (citing *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.1980)). The only reported state court appellate decision to have been remotely confronted with this issue is *Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36 (1986), *appeal denied*, 514 Pa. 618, 521 A.2d 933 (1987). This case, however, is enlightening as to how this question would be resolved if confronted by the Pennsylvania Supreme Court.

In *Phillips*, a union employee instituted an action against his former employer contending that he was discharged in retaliation for filing a workmen's compensation claim. On appeal, the Superior Court held that the tort of wrongful discharge could not be maintained by a union employee when the terms of a collective bargaining agreement afforded protection from suspension or discharge without proper cause. 503 A.2d at 37–38. The Court stated that the wrongful discharge cause of action was never intended to vindicate all transgressions from public policy but to provide a remedy to unorganized workers with no other recourse against wrongful discharge. *Id.*

*Phillips* is significant in several respects. First, the court could have but did not reject the retaliatory discharge claim in its entirety but merely held that it was unassertable by the plaintiff because of his status as a union employee. Second, in rejecting the appeal, the court recognized the purpose of the wrongful discharge action as affording protection to workers without recourse to redress certain public policy violations. This is precisely the underpinning of *Butler* and *Rettinger*. Final-

ly, Phillips has been cited in support of the notion that public policy exception applies to discharges in retaliation for filing workmen's compensation claims. *See Alexander v. Red Star Express Lines of Auburn, Inc.,* 646 F.Supp. at 678.

Based on the foregoing, this Court holds that under Pennsylvania law Burns is entitled to bring a wrongful discharge action alleging retaliation for filing a workmen's compensation claim.

## C. *Retaliatory Discharge*

■ The central issue in this case is whether Burns was terminated by UPS in retaliation for filing his workmen's compensation claims. UPS argues that Burns was discharged because of his "poor job performance, lack of cooperation, insubordination and refusal to return to a job he was fit to perform." (Brief in Support of Defendant's Motion for Summary Judgment at 13–14, Document #12). Burns contends that there is genuine issue of material fact as to whether he was terminated in retaliation for seeking workmen's compensation benefits which precludes summary judgment. This Court agrees.

In his deposition and in sworn interrogatory answers, Burns stated that on November 19, 1987, he spoke with supervisor Russ McPaul. (Excerpt of Deposition of John Burns at 53, attached as Exhibit D to Plaintiff's Memorandum In Opposition to Motion For Summary Judgment, Document #14; Plaintiff's Response to Defendant's First Set of Interrogatories dated April 30, 1990 at #20, attached as Exhibit C to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment,[3] Document #14). McPaul allegedly asked Burns if he was serious about the worker's compensa-

tion claims and stated the Duncan and Foley were very upset. (Burns Dep. at 53; Burns First Interrogatory Responses at #20). Burns further testified that on November 25, 1987, he met with Hayes, UPS Personnel Manager. Burns testified that he told Hayes that he was not prepared to return to work because of lifting that was involved[4] and the stressful situation with Duncan. (Burns Dep. at 30). Hayes reportedly told Burns not to do anything foolish and reconsider withdrawing his workmen's compensation claim because John Foley, the District Manager, was very upset about it. (Burns Dep. at 30, 32). Hayes also rejected Burns' request to submit to the company doctor because of the "embarrassment."[5] (Burns Dep. at 31–32).

Approximately a week later, on or about December 8, 1987, Burns met with Hayes at his office for about one hour. (Burns Dep. at 32, 34). Burns supposedly told Hayes that he was not ready to go back to work because he was still receiving medical treatment relating to his back injury. (Burns Dep. at 35). According to Burns, Hayes stated that the injury was a "figment of his imagination" and directed Burns to report to work. (Burns Dep. at 35; Burns First Interrogatory Responses at #20). Hayes is said to have told Burns that he did not contact Burns' doctors because he was too busy. Burns Dep. at 35.

Thereafter, Burns telephoned Hayes weekly to provide an update of his medical condition. (Burns Dep. at 49, 93–94). In each of these conversations, Hayes supposedly requested Burns to disregard his doctor's instructions and report to work and reconsider withdrawing his workmen's compensation claims. (Burns Dep. at 49, 69). Hayes also told Burns that Foley was

---

**3.** The facts set forth in the answers to these interrogatories were verified by affidavit dated May 18, 1990.

**4.** UPS contends that the collective bargaining agreement under which Burns was covered, precluded UPS from requiring managers to do lifting or packaging. From this, UPS maintains that Burns' only reason for refusing to return to work was that he did not want to work for Duncan. Burns, however, testified that while managers were "in theory" not supposed to handle packages. (Burns Dep. at 170). It is reason-

able to infer from this statement that managers did engage in lifting and packaging activity notwithstanding the collective bargaining agreement.

**5.** In defining what he meant by "embarrassment," Burns stated that Hayes did not want to report the workmen's compensation claim because he wanted to hide the fact that Burns was injured on the job and had reported it. (Burns Dep. at 31).

irate at having been named in the workmen's compensation complaint. (Burns Dep. at 69, 93, 94).

In January, 1987, Burns met again with Hayes. (Burns Dep. at 62). Hayes supposedly instructed Burns to disregard the advice of his doctor and report to work. (Burns Dep. at 63). Importantly, Hayes also is alleged to have said that Foley was very upset that he had filed a worker's compensation claim and did not withdraw it. (Burns Dep. at 64). Hayes refused Burns' request to be assigned to another position despite Burns' contention that he was medically disabled from performing his duties there. (Burns Dep. at 64).

On February 8, 1988, the day Burns was fired, he was summoned to the UPS's office by Hayes to provide a medical update. (Burns Dep. at 94). As to the workmen's compensation claim, Foley reportedly told Burns that he should have been smarter. (Burns Dep. at 97, 99). Foley is reported to have said: "You knew when you filled these reports out there was going to be problems. I warned you. I told you." (Burns Dep. at 97). Burns also testified that Foley advised him to seek other career options and then fired him. (Burns Dep. at 100). Foley, on the other hand, has a different version of what occurred at that meeting. According to Foley, after discerning that Burns was able to return to work, he and Hayes requested that he report to his former position but Burns refused to work for Duncan. (Foley Dep. at 35). Foley stated that Burns was fired because he would not report to work although he was still receiving salary. *Id.* Hayes claims that Burns was fired because he failed to provide information regarding the details of his medical condition.[6] (Excerpt of deposition of John Hayes at 68, attached as Exhibit D to Defendant's Motion For Summary Judgment).

Furthermore, Duncan testified that he had demoted Burns from the pre-load manager position because packages in the pre-load area where Burns was manager were repeatedly left unprocessed. (Excerpt of Deposition of John Duncan at 40, attached as Exhibit C to Defendant's Motion For Summary Judgment). Additionally, Duncan stated that there were also problems with the timely delivery of next-day air packages and qualifying supervisory personnel under what was referred to as the NBC process all of which were Burns' responsibility. (Duncan Dep. at 41–43). Burns, however, testified that beginning in August, 1987, Duncan subjected him to constant harassment described as "day to day critical abuse for unjustified reasons." (Burns Dep. at 39; Excerpt of Deposition of John Burns Dep. at 42, attached as Exhibit B to Defendant's Motion For Summary Judgment). Although Duncan told Burns that he was dissatisfied with his job, Burns testified that he never told him what it was he was dissatisfied with. (Burns Dep. at 39–40; Defendant's Excerpt of Burns Dep. at 42). Moreover, at the November 25, 1987 meeting with Hayes, Hayes allegedly told Burns that he "would have a job at UPS for life," to continue to see his doctor and that he would find work for Burns to do. (Burns Dep. at 30, 33).

Hayes testified that while he knew in December, 1987 and January, 1988 that Burns had filed an accident report, he did not know of the workmen's compensation claim until mid to late 1988. (Hayes Dep. at 42–43). Foley testified that he did not know of the claim of injury on November 18, 1987 nor of the workmen's compensation claim until after Burns was terminated. (Excerpt of Dep. of John Foley at 22, 23, attached as Exhibit E to Plaintiff's Memorandum In Opposition to Motion For Summary Judgment). Hayes testified, however, that it was his job to keep the district manager informed of management personnel who were out or whom he was counseling and that Burns fell into this category. (Hayes Dep. at 66). Hayes testified that he kept Foley apprised of Burns'

---

6. Hayes testified that on or about January 8, 1988, Burns informed him that he could not return to work because of the injuries resulting from the slip and from the stress. (Hayes Dep. at 46). However, on or about January 18, 1988, Burns told him that he was "fine" but refused to return to work. (Hayes Dep. at 47). Hayes testified that Burns refused to supply UPS with medical information regarding his condition. (Hayes Dep. at 67).

status throughout December, 1987 and January and February of 1988. (Hayes Dep. at 66, 67). In January, 1988, Hayes and Foley discussed terminating Burns. (Hayes Dep. at 66). Moreover, Foley's testimony is inconsistent with Burns' statement that on November 19 and 25 of 1987, he was told by McPaul and Hayes that Foley was upset that he had filed workmen's compensation claims.

Because the foregoing demonstrates the existence of genuine issues of material facts, UPS' motion for summary judgment must be denied.

D. *Exclusivity of Worker's Compensation*

 UPS maintains that Burns' "claims for personal injuries—including any emotional distress damages—are barred by the exclusivity provisions of Pennsylvania's Workmen's Compensation Act, [Pa.Stat. Ann. title 77, § 481(a) (Purdon Supp. 1990)][7], because the injuries alleged in the complaint arose out of an occurrence in the course of [Burns'] employment relationship with [UPS]. (Defendant's Motion for Summary Judgment at 15). In advancing this position, UPS relies on *Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 522 A.2d 548 (Pa. 1987) and cases which have relied on *Poyser* in dismissing personal injury claims based on intentional torts of the employer as barred by the exclusivity provision of the Workmen's Compensation Act.

*Poyser* is plainly distinguishable from the instant case. In *Poyser*, the plaintiff asserted a product liability claim and a claim based on his employer's willful disregard of the government safety regulations for physical injuries sustained while in the course of his employment. The court held that injuries caused by the derelictions of the employer did not take the plaintiff's claim for personal injuries out of the exclusivity provision of the Workmen's Compensation Act. 522 A.2d at 551. The injuries complained of in the instant case

arose from the retaliatory discharge and not personal injuries or emotional distress related to the performance of Burns' position with UPS. Consequently, the Workmen's Compensation Act is not the exclusive remedy for Burns' injuries. *See Alexander v. Red Star Express Lines of Auburn, Inc.*, 646 F.Supp. at 679.

---

7. The Pennsylvania Workmen's Compensation Act provides, in relevant part, that:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... or any-

one otherwise entitled to damages in any action at law ...
Pa.Stat.Ann. title 77, § 481(a) (Purdon Supp. 1990).