Cedric D. DRAPER

v.

ERIE RAILROAD COMPANY, a corporation, Appellant.

No. 13329.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1960.

Decided Dec. 29, 1960.

See also 183 F.Supp. 899.

James M. Arensberg, Pittsburgh, Pa. (B. A. Karlowitz, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., on the brief), for appellant.

Dennis C. Harrington, Pittsburgh, Pa. (Gene K. Lynch, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment in which the plaintiff claimed both under the F.E.L.A., 45 U.S.C.A. § 51, and the Safety Appliances Act, 45 U.S.C.A. § 11. He recovered a verdict of $85,000 on which judgment has been entered. The defendant complains of the trial judge's refusal to give an instruction that the sole basis of any verdict which the jury could return against the defendant must rest upon a finding that he fell from the car by the inefficiency of the brake to function properly upon its operation in the normal usual manner. In plainer language, the defendant wanted the F.E.L.A. claim removed from the case. In addition, he asked and was refused a directed verdict.

■ We think the court committed no error in allowing the jury to consider both the F.E.L.A. and the S.A.A. aspects of the case. The plaintiff and a fellow employee were engaged in the operation of cutting out some cars from a freight train which were to be moved to another track, then returned to the first track upon the completion of hooking up some other cars into the train. They were assured by the employee in charge of the whole operation that no other cars would be sent down onto the second track before twenty minutes. However, according to the testimony, they were so sent and the result was to start the standing cars moving in a direction toward an open switch which would let them out on to a passenger track where a train was due shortly. The plaintiff jumped upon the moving car and started to operate the Ajax-type

brake. We think there is enough here to show that what could be found as negligence on the part of the defendant's employee created a dangerous situation which might well have contributed to the faulty operation of the brake and the plaintiff's injury.

The plaintiff's injury came as follows according to his testimony: He climbed up the end of this freight car and started to tighten the brake in order to stop the car. He said that as he turned it he got some pressure but felt that there was not enough brake force to accomplish the necessary result so he gave another turn and the brake, according to his testimony, flew forward clockwise throwing him out of position and to the ground. The defendant has made much argument about the failure to prove that the plaintiff operated the brake in the normal and usual manner. And there was talk to the effect that the plaintiff had not shown that he had set the ratchet or "dog" of this brake so as to make his operation safe. All this talk is beside the point. The accident, as the plaintiff described it, did not come from the brake wheel turning back on him counterclockwise. In that case the lack of correct placing of the ratchet could well have caused his injury. But, instead, the wheel moved forward clockwise and the presence or absence of the ratchet had nothing to do with the behaviour of the brake wheel. The fact that Ajax-type brakes on some cars on this train worked satisfactorily when the cars were not moving does not give us help with this particular accident. The plaintiff's description of what he actually did under the circumstances could not have been helped by a statement from him or anybody else that he was operating in the usual and ordinary manner.[1] The jury had the facts before it, not any expert conclusion to be drawn therefrom.

At the time of his accident the plaintiff was not quite forty years of age. His life expectancy, as shown by tables introduced in evidence, was 36.2 years. He had a knee injury from the accident but the worst that happened to him was injury to his back. He had been a brakeman and his earnings in that job were shown. After this injury he can no longer be a brakeman or do other things which require heavy lifting. He cannot start and run his power mower in his own yard. He can do light work but there was evidence to the effect that lighter work such as that of a tower operator on the railroad, while performable by him, is also wanted by employees who are his seniors and who therefore take precedence over him. There was medical testimony that his injuries have now become stabilized with the probability they will not get better or be worse. He complained of continuous pain in his back saying in his own words that "it's just like a ball of fire."

While the verdict is high there are certain elements in the plaintiff's case which, if believed, keep even a high verdict from being treated as excessive. The trial judge did not think this one was and it is upon him that the exercise of discretion in such a matter rests. Lebeck v. William A. Jarvis, Inc., 3 Cir., 1957, 250 F.2d 285. And, as we have said many times, the revision of jury verdicts is not a function of the United States Court of Appeals however state practice may be to the contrary.

The judgment will be affirmed.

1. The following interrogatories by the plaintiff and the defendant's answers to them were read to the jury.

"11. Has the plaintiff violated any of the defendant's safey rules or regulations?

"Answer: No.

"12. Has the plaintiff been negligent in any manner concerning the happening of the accident involved in this action?

"Answer: No."