Perley WILSON,

v.

**Arthur T. PRASSE, Commissioner of Correction, Commonwealth of Pennsylvania, Harrisburg, James F. Maroney, Superintendent, Herbert E. Welch, Deputy Supt., and Allyn Sielaff, now Commissioner.**

**Civ. A. No. 67-644.**

United States District Court,
W. D. Pennsylvania,
Pittsburgh Division.

April 19, 1971.

R. Stanton Wettick, Jr., Neighborhood Legal Services, Pittsburgh, Pa., for plaintiff.

George R. Specter, Pittsburgh, Pa., for defendant.

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

KNOX, District Judge.

This is a prisoner's civil rights action brought by an inmate of the Pennsylvania Western Correctional Institution at Pittsburgh, Pennsylvania. Plaintiff has sued the State Commissioner of Corrections and the Warden and Deputy Warden of the Institution claiming that they have interfered with his religious freedom to worship as a Black Muslim and that they have discriminated against him as a Black Muslim in the prison and thereby have denied him his religious freedom as guaranteed by the First Amendment to the Constitution. The action was brought pursuant to the Civil Rights Act 42 U.S.C. Sections 1981, 1983 and 1985(3), and 28 U.S.C. § 1343. The action seeks both injunctive relief and damages. Case was tried to a jury which returned a general verdict for the defendant.

This case has had a long and checkered history. Plaintiff originally brought his suit in the Middle District of Pennsylvania where the State Com-

missioner of Corrections had his residence and office. The Middle District transferred the case to the Western District. In the original complaint, plaintiff sought both injunctive relief and damages and demanded a jury trial. He also claimed he had been denied access to the courts. On a Motion to Dismiss by the defendants, this court originally dismissed the complaint. Plaintiff, however, took an appeal to the Court of Appeals for the Third Circuit which reversed (Wilson v. Prasse, 404 F.2d 1380 (1968), holding that the plaintiff's claims for interference with his religious freedom presented proper issues necessitating a full trial. It was, however, determined that since plaintiff was no longer an inmate at the correctional institution for Western Pennsylvania at Pittsburgh, but instead had been removed to the correctional institution for Eastern Pennsylvania, in the Eastern District, the claim for injunctive relief against the defendants was, therefore, moot. The case was, therefore, processed for trial on the question of damages only, and since plaintiff had demanded a jury trial, was placed upon the jury trial list. While it was there pending, plaintiff was returned to the Western Correctional Institution at Pittsburgh and again renewed his prayer for injunctive relief.

The court determined that the prayer for injunctive relief would be dealt with by the court following submission of the issues to the jury for an advisory verdict under Rule 39(c) of the Rules of Civil Procedure. To assist the court in determining disposition of the prayer for injunction, six special interrogatories were presented to the jury. Two interrogatories were returned by the jury unanswered in connection with their general verdict. The remainder were answered favorably to the defendants. Plaintiff has moved for new trial claiming various errors in the instructions of the court and that the verdict is against the weight of the evidence. He also claims the court erred in refusing to grant a mistrial as the result of arguments made by the defendant's attorney to the jury concerning the source of damage payments.

Plaintiff's complaints upon which he grounded his action for deprivation of civil rights were as follows:

1. That he was prevented from corresponding with others of the Black Muslim Faith.

2. He was not permitted to have Black Muslim Ministers visit him in prison and perform services to him as a chaplain.

3. He was not permitted to obtain and wear medals and medallions symbolic of his faith.

4. He was prevented from receiving religious literature. He claimed he could not receive an approved edition of the Koran, "How to Eat to Live", "Muhammad Speaks" and other Black Muslim Publications.

5. That he was prevented from holding religious services with his fellow Black Muslims within the penal institution.

6. That the defendants failed to comply with his requests as to diet with the result that he was compelled to eat pork and foods fried in or otherwise prepared with the essence of pork on them.

It was conceded by the defendants that the Black Muslim Faith was a religion within the protection of the First Amendment.

This is another in the growing series of prisoners' civil rights cases complaining that they are deprived of their constitutional rights by prison authorities. Such cases were practically unknown ten years ago and have now reached sizable proportions. It is recognized that prisoners do have freedom of religion and have the rights to exercise other such Federal Constitutional Rights even though they are incarcerated in prisons unless it appears that such exercise interferes with prison discipline and operation. This much has been clear

**12**

since the decision of the U. S. Supreme Court in Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). It is undoubtedly true that prison officials have wide authority to exercise disciplinary control over the inmates within their institutions and they have wide discretions in the exercise of this authority. A long series of violent prison riots have taught the courts that we should be hesitant in injecting hampering restrictions upon those who are charged with maintaining order in what is often an explosive situation. It is a question of competition of two competing interests. First, the interest of the Federal Government in seeing to it that all persons are accorded such rights as are proper for the exercise of religious freedom and also the right to access to literature, against the competing right of the states to preserve order and prevent riots in their penal institutions. In this area, the courts have to walk a very tight rope very carefully indeed.

■ For us in the Third Circuit, we have guidance of not only Cooper v. Pate, supra, from the U. S. Supreme Court but also the specific guidance of the Court of Appeals of this Circuit which has had occasion to consider the problem at various times. We have Long v. Parker, 390 F.2d 816 (3rd Cir. 1968) which indicates at least as to religious literature the prison officials must prove that the presence of such literature creates a clear and present danger of a breach of security of the prison or discipline or some other substantial interference with the orderly functioning of the institution. See also Gittlemacker v. Prasse, 428 F.2d 1 (3rd Cir. 1970). We further have the very learned and exhaustive decision of Judge Higginbottham in the Eastern District of Pennsylvania in the case of Knuckles v. Prasse, 302 F.Supp. 1036 (E.D.Pa.1969) whose opinion was affirmed by the Court of Appeals for the Third Circuit in Knuckles v. Prasse, 435 F.2d 1255 (3rd Cir. 1970). In this case, Judge Higginbottham deals at length with the Black Muslim religion and concludes that pris-

on adherents thereof are entitled to certain rights.

The jury in this case was instructed at length with respect to prisoners' rights and also the rights of prison authorities to enact reasonable rules and regulations. The jury was clearly told that with respect to literature they must find that a clear and present danger of interference with prison discipline existed before they could find rules and regulations interfering with the right to receive religious literature were just and reasonable. These instructions were in accordance with the rules laid down in Long v. Parker, supra. The trouble with plaintiff's position is that the jury found against him after a lengthy trial and able arguments by counsel.

■ With respect to the prayer for injunctive relief, we believe that this can be dispensed with since plaintiff has on April 9, 1971, been paroled from the Western Correctional Institution. He is no longer subject to the prison discipline of which he complained and, therefore, his request for injunctive relief is once more moot. See Richey v. Wilkins, 335 F.2d 1 (2d Cir. 1964).

The disposition of plaintiff's motion for new trial will, however, require more extensive consideration.

■ First: plaintiff claims that the court erred in instructing the jury relative to the reasonableness of prison regulations. The court instructed the jury as follows with respect to the right of prison authorities to make reasonable rules and regulations for the operation of the institution. (Tr. 255 et seq.)

"Now, it appears in this case that plaintiff is a prisoner duly incarcerated in a state correctional institution. Now, this very fact means that he is deprived of his liberty to a great extent. That is why he was sent there.

In such a case the prison authorities have the right to make reasonable rules and regulations for the operation of the prison, and they have wide discretion in the matters of prison operation and discipline.

The subject of reasonable maintenance of discipline in a state institution like this is not subject to the supervision of a federal court, whether a judge or jury or combined. On the other hand, plaintiff is entitled to the free exercise of his religion as long as it does not interfere with the reasonable rules and regulations of the institution. The prison officials need not have special rules and regulations tailored to meet the needs of every group in the prison.

Further, while they should impose no unreasonable barriers, that is, unreasonable under the circumstances of the particular case, to the free exercise of an inmate's religion, they are not under duty to supply every inmate with a clergyman or religious services of his choice.

The question which will be before you to decide is whether the rules and regulations of this institution, as applied to this plaintiff, were unreasonable and unjustified with respect to the needs of prison restraints and discipline.

While prison officials have wide discretion in the maintenance of discipline, they are not entitled to punish or harass anyone because of his race or religious beliefs.

On the other hand, plaintiff is not entitled to the full exercise of his religion to the extent that the same might be injurious to the rights of others.

Thus, for instance, plaintiff would not be entitled to a special diet if adequate nourishment can be obtained by him from other foods which are not objectionable to him on religious grounds.

Also, if in the sound judgment of prison authorities certain correspondence and publications would be considered inflammatory and subversive of prison discipline under the circumstances existing in this institution, and the prison authorities are not motivated by religious or racial prejudice, they can exclude such publications and correspondence.

However, to justify the prohibition of religious literature and the practices of a religion, the prison officials must prove that the literature creates a clear and present danger of a breach of prison security or discipline or some other substantial interference with the orderly functioning of the institution."

It will be noted that these words in the instructions are to a considerable extent taken from the decision of the Court of Appeals in Long v. Parker, 390 F.2d 816 (3rd Cir. 1968). It is believed that they are also a correct statement of the law as derived from other cases such as Abernathy v. Cunningham, 393 F.2d 775 (4th Cir. 1968); Gittlemacker v. Prasse, supra; Knuckles v. Prasse, supra, Lee v. Crouse, 284 F.Supp. 541 (D.C.Kan.1967), aff'd per curiam 396 F.2d 952 (10th Cir. 1968); Ray v. Brierley, 316 F.Supp. 1057 (W.D.Pa.1970); Sharp v. Sigler, 408 F.2d 966 (8th Cir. 1969) Sostre v. McGinnis, 334 F.2d 906 (2d Cir. 1964) cert. den. 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96.

Further, the court affirmed plaintiff's request for instruction No. 3 (Tr. 268) which reads as follows:

"Three: the fact that plaintiff is an inmate at a correctional institution does not deprive him of his right to practice his religion in prison to the same extent and degree that any other religion is practiced in prison. This is modified by adding the words 'depending upon the facts and circumstances of this particular case and the law as given to you with respect to this matter in the general charge'."

The jury was further told at the first page of the charge (Tr. 247) that they were not to single out one instruction alone as stating the law but must consider the instructions as a whole.

Plaintiff further complains that the word "improperly" in the special questions submitted to the jury was not defined. The jury was asked in these spe-

cial questions to determine whether the defendants had acted *improperly* with respect to the various complaints of the plaintiff. At page Tr. 266 of the charge, the jury was specifically instructed with respect to the word "improperly" that this was to mean whether the acts of the defendants were justified under the facts and circumstances and *instructions previously given to them.* This brought the whole of the charge into play. In any event, this question is now moot because these questions were asked of the jury in connection with the advisory verdict to aid the court with respect to the prayer for injunction. This is now moot because plaintiff has been paroled from the institution. This was not a class action, but one brought by plaintiff in his own behalf alone.

Second: plaintiff next complains that the verdict is against the weight of the evidence and that the court erred in refusing to instruct the jury that the defendants had introduced insufficient evidence with respect to their defense. It is further claimed that the court should have instructed the jury that the defendants were liable to plaintiff as a matter of law. We must first remember that the jury had before it uncontradicted testimony by Superintendent Brierley of the State Correctional Institution that the prison officials had attempted to find a Black Muslim minister in the Pittsburgh area without success. He further pointed out that pursuant to the Order of Court by Judge Higginbotham in Knuckles v. Prasse, supra, a Black Muslim minister in Philadelphia was to make available a list of accredited ministers of that area but no minister had yet come forward. He further stated that the prison officials had written to Elijah Muhammad, the spiritual leader of the Black Muslims for information upon the availability of a minister to act as chaplain for the Black Muslims in the prison and had received no reply. See N.T. pp. 220 to 233.

The jury was also entitled to believe other testimony offered by the defendants or admitted by the plaintiff's witnesses on cross-examination. An approved copy of the Koran was in the institution. Other publications that plaintiff claimed were denied to him were, in fact, available to him. N.T. pp. 110, 116 and 216. It further appeared that Black Muslims had conducted services by using a lay Muslim minister at the institution. N.T. pp. 18–20 and 217–218. The prison chapel was available for use by Black Muslims but they had objected to the presence of certain articles representative of other religions in the chapel. N. T. pp. 50–52. As noted above, the prison authorities had attempted to obtain a Black Muslim minister to serve as chaplain to the inmates but without success. A steward of the institution testified that the prison diet was such that if plaintiff chose food which contained neither pork or essence of pork, he could still obtain a satisfactory diet. N.T. 236. Superintendent Brierley also testified that there had been trouble in the past with the Black Muslims and that some of the literature sent in to the prison for them was inflammatory. N. T. pp. 217–221.

Inasmuch as all of the testimony bearing upon plaintiff's rights was oral testimony, the court could not direct a verdict for the plaintiff and could not now enter a judgment NOV if the same had been requested. Lewin v. Metro. L. Ins. Co., 394 F.2d 608 (3rd Cir. 1968). All the court could do was send the case to the jury to determine the extent to which they believed plaintiff and his witnesses, or, on the other hand, the defense witnesses. Arkwright Mut. Ins. Co. v. Phila. Electric Co., 427 F.2d 1273 (3rd Cir. 1970).

Since there was substantial evidence to justify the jury's verdict and this is a jury trial in Federal Court, pursuant to the Seventh Amendment, the court should not interfere with the verdict and set the same aside, unless it is against the overwhelming weight of the credible evidence. Magee v. General Motors Corp., 213 F.2d 899 (3rd Cir. 1954); Lewin v. Metro. L. Ins. Co., supra.

As well stated in the defendant's brief, the plaintiff is apparently confus-

ing the quality of the evidence with the quantity of the evidence. The court should not constitute himself an additional member of the jury panel for the purpose of setting aside the verdict and substituting his judgment for that of the jury. Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129 (3rd Cir. 1965); Draper v. Erie R. R. Co. (W.D. Pa.1960) 183 F.Supp. 899, aff'd 285 F. 2d 255 (3rd Cir. 1960).

It was thus impossible to direct a verdict for plaintiff.

■ Third: plaintiff contends that the court erred with respect to the charge on general and nominal damages. At page Tr. 262, the court instructed the jury that there were three kinds of damages to which plaintiff might be entitled. First, there were actual damages covering expenses for which plaintiff was out of pocket for food purchased from the commissary and also for humiliation, embarrassment and mental suffering. The jury was then told that if it found no actual damages but found that the plaintiff's rights had been invaded by the defendants *without justification*, then they would find for the plaintiff nominal damages. (Tr. 262). These damages would be awarded for the purpose of vindicating plaintiff's rights where no actual damages had been sustained. This instruction, of course, presented to the jury the question as to whether plaintiff's rights had been invaded and whether the prison authorities had justification in proper prison rules and discipline for such invasion of plaintiff's rights. The jury was further instructed with respect to punitive damages at Tr. 263 that if they found a wrongful act had been done intentionally and without just cause or a reasonable excuse, then under the laws of Pennsylvania applying to a case such as this, malice would be presumed. This was a strong charge in favor of the plaintiff, perhaps, stronger than that to which he was entitled. But, nevertheless, the jury found that he was not entitled to punitive damages and found for the defendants, it being determined the

plaintiff was not entitled to either actual or nominal damages.

■ Fourth: plaintiff's objection to a statement by defense attorney concerning the source of damage payment. At page 241 of transcript, attorney for defendants in his argument to the jury stated:

"This is a lawsuit against these individuals as individuals, not as employees of the Commonwealth, and there would be no liability on the Commonwealth of Pennsylvania for any verdict which you might be inclined to render in this case.

If there were to be an award of money damages, it would have to be paid by these individuals out of their own pockets."

This was promptly objected to by plaintiff's attorney. After considerable discussion between the court and counsel and denial of a Motion for Mistrial, the court instructed the jury as follows: (Tr. 245)

"Members of the jury, the discussion we have had was relative to a remark about the Commonwealth reimbursing or not reimbursing these defendants. The Commonwealth is not a party to this case. This is a suit against three individuals, as you will understand later on when I deliver my charge to you.

"There is no evidence in this case that the Commonwealth will reimburse them or that the Commonwealth will not reimburse them, and, in any event, that would be irrelevant to this case. You are only to consider the liability of these individuals divorced from anything else."

It is believed that this instruction by the court cured any false impression or prejudicial effect that might have been derived from the argument of defendants' counsel to the jury.

That this remark had no effect upon the jury's verdict is evidenced by the fact that regardless of the possibility of reimbursement of defendants by the state, the jury nevertheless refused to

find even *nominal* damages let alone actual or punitive damages against these defendants. From the fact that the jury found for the defendants on all points, not even allowing one dollar of damages against them, it is apparent that the remark that the defendants might have to pay out of their own pockets had no effect upon the jury's thinking.

The case was well and vigorously tried to the jury by competent counsel. There was no substantial error in the court's charge and any false impression the jury might have received from the remark by defendants' counsel in his argument was adequately cured in the opinion of the trial judge. In any event, these remarks had no effect upon the jury's thinking. For these reasons, the Motion for New Trial will be denied. In view of the fact that plaintiff is now on parole and is presently under no need for injunctive relief against the defendants, the petition for injunction will be denied, without prejudice to plaintiff's right to renew the same should his parole be revoked and he be returned to this institution.