Stephen ALEXANDER a/k/a Stephen J. Alexander and Emily Alexander, h/w, Plaintiffs,

v.

RED STAR EXPRESS LINES OF AUBURN, INC., Defendant.

Civ. A. No. 84–4246.

United States District Court, E.D. Pennsylvania.

July 8, 1986.

Robert A. Hoffa, Nino V. Tinari, Phila., Pa., for plaintiffs.

Thomas Martin, Liebert, Short, Fitzpatrick & Lavin, Phila., Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This is an action for wrongful discharge in which the court has jurisdiction by reason of the diversity of citizenship of the parties. The court entered judgment in favor of plaintiff Stephen Alexander [1] against defendant Red Star Express Lines of Auburn, Inc. for $40,252.00 in accordance with the jury's answers to interrogatories submitted pursuant to Fed.R.Civ.P. 49(b). Defendant timely filed a motion for judgment notwithstanding the verdict, pursuant to Fed.R.Civ.P. 50, or, in the alternative, for a new trial, pursuant to Fed.R. Civ.P. 59. For the reasons which follow the court grants defendant's motion for judgment notwithstanding the verdict and, in the alternative, grants defendant's motion for a new trial. Fed.R.Civ.P. 50(c)(1).

## FACTS

Plaintiff Steven Alexander [2] was hired by the defendant in 1980 and became a dock foreman. (Stip. 1). He was a management employee receiving wages in the amount of $452 per week in March, 1983. (Stip. 3 and 5). On March 29, 1983, Mr. Alexander injured his right knee at work. (Stip 2; Tr. at 23). He applied for and was awarded workmen's compensation benefits in the amount of $302 per week. (Stip. 2).

It was defendant's policy, though not its legal obligation, to pay disabled management employees the *difference* between their workmen's compensation benefits and regular salary for a "reasonable period." (Tr. at 25, 30–32, 47–48, 73–74 and 79–80). However, because of a clerical error, de-fendant continued to pay plaintiff his full wages after his injury. (Tr. at 23–25). Plaintiff attempted to have defendant correct its mistake (Tr. at 24) but deposited the money to his own account. In June, 1983, plaintiff was contacted by Dick Thomas, a headquarters employee of defendant, regarding the erroneous overpayments. (Tr. at 24–25). Mr. Thomas told plaintiff that defendant only intended to pay plaintiff the difference between his workmen's compensation benefits and his regular salary, that is, $150 per week. (Tr. at 24–25). Mr. Thomas said that the overpayment approximating $2,300 would be repaid by withholding the $150 per week supplement until the amount withheld equalled the overpayment; then the supplement would be paid by defendant again. (Tr. at 25). Plaintiff concedes that defendant was not required to pay the $150 per week supplement. (Tr. at 30–31).

In early August, 1983, Doug Cox, Hub Manager of defendant, told plaintiff that if he did not return to work he would be replaced. (Tr. at 27–28). Plaintiff returned to work as a dispatcher, supposedly a light duty job, on August 15, 1983 (Tr. at 28), but on August 31, 1983, plaintiff's knee became so swollen he could no longer work. (Tr. at 29–30). He again filed for and received workmen's compensation benefits. (Tr. at 30). Plaintiff received only a partial check from defendant for his August work because the salary overpayment that had not yet been repaid was deducted from his earnings. (Tr. at 30).

In early September, 1983, Doug Cox called plaintiff and told him that if he did not return to work he would be removed from the payroll and all his benefits would then be terminated in 90 days. (Tr. at 32–33). Shortly after this conversation, plaintiff received from Mr. Cox a letter stating that he could return to work when

---

**1.** Although Emily Alexander is a named plaintiff in the second amended complaint, it alleges claims on behalf of Stephen Alexander only.

**2.** All references to plaintiff signify Stephen Alexander. *See supra* note 1. This statement of facts is based on stipulations, plaintiff's evi-dence, and certain uncontested evidence presented by defendant. The court has not weighed credibility and has given plaintiff the benefit of all reasonable inferences from the evidence.

he was physically qualified. (Tr. at 46–47). In January, 1984, plaintiff received from defendant a letter dated December 22, 1983, which began "Dear Former Employee," and discussed termination of plaintiff's group insurance benefits. (Tr. at 34–35; P.Ex. 1). After receiving this letter, plaintiff and his counsel called defendant's New York headquarters and were told by a representative of defendant that plaintiff had been terminated on December 8, 1983. (Tr. at 34).

In February, 1984, plaintiff initiated state court proceedings. Shortly thereafter he received a letter from Doug Cox offering him two light duty positions with defendant. (Tr. at 35, 49–51, and 75). Plaintiff did not reply. (Tr. at 50–51).

On August 6, 1984, plaintiff and his wife filed the original complaint in this action. On October 3, 1984, defendant sent plaintiff a letter offering him a light duty job; plaintiff turned the letter over to his counsel but did not respond. (Tr. at 35–36 and 75; P.Ex. 2). On October 15, 1984, the workmen's compensation carrier sent plaintiff a letter that it would seek termination of his benefits if plaintiff refused work that was consistent with plaintiff's treating physician's assessment of his abilities and physical restrictions when offered by defendant. (Tr. at 55–56 and 57–58). When plaintiff failed to take the work that defendant had offered, the workmen's compensation carrier instituted termination proceedings. (Tr. at 37). Plaintiff's benefits were subsequently reduced to $109 per week (although they were later increased to $134 per week), but his benefits had not been terminated at the time of trial. (Tr. at 37 and 42–43).

Some weeks prior to trial, plaintiff became physically able to work again as a dock foreman (Tr. at 42–44) but he did not so inform the workmen's compensation carrier or the defendant. (Tr. at 44). Plaintiff refuses to return to work for defendant because he believes he has been fired (Tr. at 44–45); he formed his intention never again to work for defendant after he received the "Dear Former Employee" letter (P.Ex. 1) in January, 1984. (Tr. at 51). Plaintiff is still carried on defendant's corporate records as an inactive employee (Tr. at 72) and he can return to work in his former position at any time. (Tr. at 75). The "Dear Former Employee" letter is a form letter sent by defendant to all employees who are losing group insurance benefits for any reason to inform them that the group policies can be converted to individual policies on which the employees pay the premium. (Tr. at 85–86). Plaintiff understood that he could do this. (Tr. at 51).

### HISTORY OF THE LITIGATION

Plaintiff filed the original complaint in this action in the Court of Common Pleas of Philadelphia County, Pennsylvania on August 6, 1984. On September 6, 1984, defendant filed a petition to remove the action to federal court.

Plaintiff's original complaint contained four counts presenting the following claims:

On behalf of Stephen Alexander:

| Count I | — Wrongful Discharge |
| Counts II and III | — Intentional Infliction of Emotional Distress [3] |

On behalf of Emily Alexander: [4]

| Count IV | — Intentional Infliction of Emotional Distress |

Following removal, defendant filed a motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) because:

(1) Plaintiff had failed to plead the type of "outrageous conduct" necessary to prevail on Counts II–IV; and

(2) Plaintiff had failed to state a wrongful discharge claim because he had never been fired.

Upon consideration of defendant's motion and plaintiff's response, the court granted defendant's motion as to Counts II–IV and scheduled a hearing on the motion as to

---

**3.** There was no apparent difference between the claims made in Counts II and III.

**4.** *See supra* note 1.

Count I. Plaintiff then filed a supplemental response with an affidavit of Stephen Alexander that provided in part: "15. That both my family and I have suffered financial losses as well as emotional difficulties as a result of Doug Cox's action on behalf of the defendant."

On November 19, 1984, plaintiff filed an amended complaint pursuant to Fed.R. Civ.P. 15(a) with leave of court. The court dismissed that amended complaint *sua sponte* for failing to allege federal jurisdiction and plaintiff then filed an "Amended Amended Complaint" stating in part:

30. As a result of the aforesaid determination [sic] of plaintiff's employment with defendant RED STAR, plaintiff has suffered loss of income, corporate benefits and has been constrained to expend large sums of money in support of himself and his family.

. . . .

WHEREFORE, plaintiff demands judgment against the defendant as follows:

1. For compensatory damages to the plaintiff in an amount in excess of $20,000.
2. For punitive damages in a just and reasonable amount.

Defendant again moved to dismiss plaintiff's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that plaintiff had not contended he had been discharged and that Pennsylvania law did not provide a cause of action for an employer's failure to continue employee benefits to a disabled employee collecting workmen's compensation benefits.[5] The court's Order of February 12, 1985 denied defendant's motion on the ground that plaintiff's second amended complaint set forth a sufficient allegation that plaintiff Stephen Alexander's discretionary benefits were terminated for his claiming workmen's compensation. But if after discovery there were no disputed facts as to whether plaintiff Stephen Alexander's removal from employment was for making a workmen's compen-

sation claim, either party was allowed to move for summary judgment on or before March 15, 1985.[6]

Defendant's answer to the second amended complaint asserted that plaintiff failed to state a claim and that plaintiff's claims were barred by the exclusive remedy provisions of the Pennsylvania Workmen's Compensation Act.

Plaintiff's pretrial memorandum, filed May 3, 1985, stated in part:

*Damages*

Plaintiff is seeking damages on a contract theory of approximately $40,000.00 plus increases in the value of corporate benefits from December 8, 1983. Plaintiff is also seeking damages on the tort theory of an amount in excess of $20,-000.00 consisting of back pay and lost corporate benefits. Furthermore, there are also damages resulting from the wrongful discharge such as medical bills incurred as a result of the lost corporate benefits. Plaintiff is also seeking punitive damages from the defendant as a result of RED STAR. [sic]

Defendant's responsive supplemental pretrial memorandum, stated in part:

*Damages*

Plaintiff claims that he is permanently and totally disabled from performing the duties of his job. Consequently, even if plaintiff were to establish that he had been tortiously terminated from his employment he would not be entitled to any damages since he admits that he is physically incapable of performing the work required of him.

If plaintiff is now seeking to recover damages based on the breach of some alleged oral contract he is precluded from recovery by the provisions of the applicable Statute of Frauds.

Upon inquiry by the court at the final pretrial conference on June 11, 1985, plaintiff's counsel stated that the only damages

---

5. Defendant also argued that its conduct had not transgressed any clear public policy.

6. This date was extended to May 3, 1985 by the court's Order of March 6, 1985.

claimed by plaintiff were lost corporate benefits. The court then ordered plaintiff to submit a statement of his claimed compensatory damages within thirty (30) days. Counsel· for plaintiff then submitted the following "Statement of Compensatory Damages":

1. Plaintiff was being paid $452.00 per week at the time of his termination on December 8, 1983. Plaintiff is entitled to lost wages from that date to the date of trial minus any amount he has received from Workmen's Compensation benefits.

2. In addition to his lost wages, plaintiff has also lost all corporate benefits including hospitalization and health care for his family and himself and the loss of contributions to a pension plan. There is no dollar value to be passed to these benefits but merely are part of his employment package with the defendant.

3. Since the date of his termination of employment with the defendant, plaintiff has been caused to pay for his own medical attention. During this time, plaintiff has been responsible for payments in the amount of $119.00 to Frankford Hospital, $15.00 to MCP Emergency Services, $28.00 to Eastern Cardiology Associates Limited and $90.00 to Frankford Avenue Medical Associates. Copies of those bills are attached hereto.

The court then ruled that at trial, plaintiff would be limited to claiming the compensatory damages set forth with specificity in his statement of compensatory damages. This included only lost wages minus both workmen's compensation and any overpayment by defendant not already recouped and medical expenses in the amount of $252.

The case was tried on August 26–27, 1985. The jury answered interrogatories submitted pursuant to Fed.R.Civ.P. 49(b) as follows:

INTERROGATORIES TO THE JURY

1. Has the plaintiff proved by a preponderance of the evidence that the [sic] he was discharged from his employment with defendant in retaliation for exercising his rights under the Workmen's Compensation Act of Pennsylvania? Yes X No__

. . .

2. In what amount has damage to the plaintiff been caused by the retaliatory conduct of the defendant?

| | |
|---|---|
| Medical Expenses | $ 252.00 |
| Pain and Suffering | 40,000.00 |
| TOTAL | $40,252.00 |

The court entered judgment accordingly.

Defendant timely filed a motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. Fed.R. Civ.P. 50 and 59. Defendant asserts nineteen grounds for this motion, all of which were adequately raised by defendant's motions for directed verdict at the close of plaintiff's case and at the close of the evidence. (Tr. at 64–69, 91 and 134–35). These grounds may be summarized as follows:

(1) Plaintiff has stated no cause of action;

(2) Plaintiff was not fired;

(3) Plaintiff's unwillingness to return to work bars any recovery;

(4) Plaintiff's inability to work bars any recovery;

(5) Defendant's conduct was not the product of retaliatory motivation; and

(6) Plaintiff is barred from claiming the specific items of damages claimed, medical expenses and pain and suffering.

With regard to grounds (2) through (6) defendant contends in part that the evidence compels judgment in its favor, or, in the alternative, a new trial because the jury's answers to interrogatories were against the clear weight of the evidence.

## DISCUSSION

The standard for granting a judgment notwithstanding the verdict is the same as

that governing a directed verdict. *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253, 257 (3d Cir.1986); *Scott v. Plante*, 641 F.2d 117, 135 (3d Cir.1981), *vacated on other grounds*, 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982). The court, giving the party who secured the jury verdict the benefit of all reasonable inferences that can be drawn from that evidence, must determine, without weighing the credibility of the evidence, whether reasonable minds could only come to one conclusion. *See Scott*, 641 F.2d at 134. *See also Brady v. Southern Railroad*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943); *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177–80 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *E.J. Stewart, Inc. v. Aitken Products, Inc.*, 607 F.Supp. 883, 888 (E.D.Pa. 1985). Normally, when the evidence is contradictory, a judgment notwithstanding the verdict is inappropriate. *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 811 (3d Cir.1984), *cert. denied*, — U.S. —, 106 S.Ct. 3284, 91 L.Ed.2d 572 (U.S. June 23, 1986) (84–1907); *Fireman's Fund*, 540 F.2d at 1178.

## I. Cause of Action for Wrongful Discharge

■ Defendant argues that plaintiff failed to establish a cause of action for wrongful discharge of an at-will employee. Such a cause of action exists under Pennsylvania law, although its parameters are imprecise. *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983); *Ferguson v. Freedom Forge Corp.*, 604 F.Supp. 1157 (W.D.Pa.1985); *Gordon v. Lancaster Osteopathic Hosp. Ass'n., Inc.*, 340 Pa.Super. 253, 489 A.2d 1364 (1985); *Rossi v. Penn St. Univ.*, 340 Pa.Super. 39, 489 A.2d 828 (1985). *Cf. Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (implying there is such a cause of action). To establish this cause of action requires proof that the plaintiff was discharged for reasons contrary to a clear mandate of public policy. *Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Su-

per. 106, 466 A.2d 1084 (1983); *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978). *Cf. Geary*, 456 Pa. at 185, 319 A.2d at 180 (implying this requirement). The jury found that plaintiff was fired in retaliation for filing workmen's compensation claims; *Geary* suggests that this allegation if proved would sustain a cause of action for wrongful discharge. *Geary*, 456 Pa. at 183 n. 16, 319 A.2d at 180 n. 16. *See Butler v. Negley House, Inc.*, 129 Pa.L.J. 350 (Ct.Comm.Pleas Allegheny County 1981) (Pennsylvania common law provides a wrongful discharge cause of action against employer who takes retaliatory action in response to employee's filing workmen's compensation claim). *Cf. Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36 (Pa.Super.Ct.1986) (wrongful discharge suit based on retaliation for filing workmen's compensation claim cannot be brought by employee covered by·collective bargaining agreement because otherwise protected by contract). Although there is no Pennsylvania Supreme Court decision squarely on point, developing Pennsylvania law suggests that there can now be a cause of action for discharge in retaliation for filing workmen's compensation claims. *See Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 24 (3d Cir.1986) (where the Pennsylvania Supreme Court has not ruled a federal court must predict what that state court would hold); *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 218 (3d Cir.1984).

■ Defendant argues that plaintiff has no cause of action because the Pennsylvania workmen's compensation scheme itself is plaintiff's exclusive remedy. A wrongful discharge suit may not be brought in Pennsylvania by a plaintiff otherwise protected by contract or statute. *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 223–24 (3d Cir.1984) (statute); *Buffett v. Warner Communications, Inc.*, 692 F.2d 910, 919 (3d Cir.1982) (statute); *Deramo v. Consolidated Rail Corp.*, 607 F.Supp. 100, 101–103 (E.D.Pa.1985) (stat-

ute); *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36 (Pa.Super.Ct. 1986) (contract). However, the Pennsylvania workmen's compensation statute provides no express remedy for a discharge in retaliation for filing a compensation claim. *Butler v. Negley,* 129 Pa.L.J. 350, 352–54 (Ct. Common Pleas Allegheny County 1981); 77 P.S. § 1 *et seq.* Although the scheme is exclusive even as to work-related physical injuries which are not compensable, *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983), a wrongful discharge claim is not the sort of injury to which the statute applies. The court rejects defendant's argument that the Pennsylvania workmen's compensation statute provides the exclusive remedy for retaliatory discharge of an employee claiming benefits under the Act. *Cf.* 77 P.S. §§ 411 and 481; *Weldon v. Celotex Corp.,* 695 F.2d 67, 70–71 (3d Cir.1982) (there can be no tort recovery under Pennsylvania law for disease covered by the workmen's compensation statute); *Perez v. Blumenthal Bros. Chocolate Co.,* 428 Pa. 225, 237 A.2d 227 (1968) (recovery for disease not covered by compensation statute permitted).

## II. Plaintiff's Discharge

Defendant contends that there was *no* evidence to support the jury's finding that defendant discharged the plaintiff. But the jury evidently found that defendant had discharged plaintiff.[7] Plaintiff cites the three items of evidence supporting this finding:

(1) In early September, 1983, Doug Cox, defendant's Hub Manager, called plaintiff and told him that if he did not return to work he would be removed from the payroll and in 90 days all his benefits would be terminated. (Tr. at 32–33).

(2) In January, 1984, plaintiff received from defendant a letter dated December 22, 1983, which began "Dear Former Employee," and discussed termination of plaintiff's insurance benefits. (Tr. at 34–35; P. Ex. 1).

(3) After receiving P.Ex. 1, plaintiff and his counsel called defendant's headquarters and a representative of defendant said plaintiff had been terminated on December 8, 1983. (Tr. at 34).

The only other evidence of record arguably supporting the finding is defendant's failure to pay plaintiff the $150 per week supplement to his workmen's compensation benefits after he left work in August, 1983. (Tr. at 30–31).

■ Mr. Cox testified on behalf of defendant that no representative of defendant ever told plaintiff he could not have his job back (Tr. at 75) but defendant did not establish the extent of Mr. Cox's knowledge on this point. In any event, the court is barred from crediting this evidence; in view of the jury findings, the plaintiff rather than the defendant must be given the benefit of all the evidence and reasonable inferences that may be drawn therefrom. *Scott,* 641 F.2d at 134. There is more than a "mere scintilla" of evidence that plaintiff was fired on December 8, 1983, so the court cannot enter judgment notwithstanding the verdict on the ground that plaintiff was not discharged. *Fireman's Fund,* 540 F.2d at 1179–80.

## III. Plaintiff's Unwillingness to Work

Plaintiff testified that he would never again work for defendant after receiving the "Dear Former Employee" letter (P.Ex. 1) in January, 1984. (Tr. at 44–45 and 51). Plaintiff admittedly never sought to return to work for defendant in any capacity because he believed that he had been fired, despite Mr. Cox's earlier letter that plaintiff could return to work when physically able (Tr. at 46–47). He also admitted that he took no action on defendant's offers of

---

**7.** The first interrogatory submitted to the jury asked whether plaintiff had proved he had been discharged in retaliation for seeking workmen's compensation benefits; no separate question as to the fact of firing *per se* was asked. However, the jury's finding of retaliatory discharge as well as its general verdict can be understood only as a finding in fact that defendant had terminated plaintiff.

light duty positions in February and October, 1984 (Tr. at 35–36, 49–51 and 75; P.Ex. 2), and that some weeks prior to trial he became physically able to return to his original position of dock foreman (Tr. at 42–44), but that he did not so inform defendant. (Tr. at 44).

■ Defendant argues that plaintiff's unwillingness to return to work bars plaintiff from recovery. In deciding defendant's motion for a judgment notwithstanding the verdict, the court must accept plaintiff's evidence that he was discharged on December 8, 1983, but was not aware of this until January, 1984. (Tr. at 34–35; P.Ex. 1). Plaintiff admitted that defendant offered him two light duty positions in February, 1984 but he refused to accept them. (Tr. at 35, 49–51 and 75). Even if plaintiff were entitled to disregard Mr. Cox's letter of September, 1983 that stated plaintiff could return to work when physically qualified because that letter was sent before he was fired, when defendant offered the light duty positions in February, 1984 and plaintiff refused to accept them, the purported wrongful discharge was no longer a proximate cause of plaintiff's damages.[8] Failure to accept the positions also constituted a failure to mitigate damages. *See Gulf Consol. Int'l., Inc. v. Murphy,* 658 S.W.2d 565 (Tex.1983) (measure of damages for wrongful discharge is present value of contract if not breached less amounts employee should have been able to earn in exercise of reasonable diligence). *See also Atcherson v. Siebenmann,* 458 F.Supp. 526, 537 (S.D.Iowa 1978) (plaintiff claiming discharge in violation of constitutional rights must make reasonable effort to mitigate damages by accepting alternative employment). *Accord, O'Neal v. Gresham,* 519 F.2d 803, 805 (4th Cir.1985). *Cf. McKinney Mfg. Corp. v. Workmen's Compensation Appeal Board,* 305 A.2d 59 (Pa. Cmwlth.Ct.1973) (compensation benefits must continue where employee could do light work but employer's plant was shut

down and it offered no such work). Plaintiff has not presented any evidence or made any argument that it would be unreasonable to expect him to return to work to mitigate damages.

Plaintiff claimed two items of damages: medical expenses and pain and suffering, both purportedly incurred because of plaintiff's lost wages or corporate benefits. The jury awarded plaintiff $252 for medical expenses based on the following bills:

| | Amount | Date of Service |
|---|---|---|
| P. Ex. 3 | $ 90.00 | 9/18/84 |
| P. Ex. 4 | 15.00 | 12/13/84 |
| P. Ex. 5 | 28.00 | 12/13/84 |
| P. Ex. 6 | 119.00 | 12/13/84 |
| | $252.00 | |

These expenses were incurred well after plaintiff knew he could return to work. The last three bills were incurred after defendant again offered plaintiff a light duty job in October, 1984. (Tr. at 35–36 and 75). Plaintiff cannot recover these medical expenses as a matter of law. They were not proximately caused by the purported wrongful discharge; plaintiff could have avoided incurring medical expenses not covered by a corporate benefit plan if he had returned to work. Defendant is entitled to judgment notwithstanding the verdict as to medical expenses because of his refusal to return to work. However, because plaintiff's pain and suffering might have occurred at least in part after he concluded he was fired but before he was offered another job, defendant is not entitled to judgment notwithstanding the verdict on that element of damages for that reason.

### IV. Plaintiff's Inability to Work

Plaintiff testified that he was unable to perform his former position as dock foreman from the time he was wrongfully discharged until a few weeks before trial. (Tr. at 42–44). He refused to take the light duty jobs offered him within that period. (Tr. at 35–36, 49–51 and 75). The only

---

8. The court has discovered no wrongful discharge case in which the plaintiff refused to accept a good faith offer to return to work.

reasonable conclusion on the evidence is that plaintiff could not perform his former work during that period as he testified. But if plaintiff could not work then, defendant is entitled to judgment notwithstanding the verdict because defendant had no obligation to furnish wages or other fringe benefits to plaintiff when he was physically unable to work.

■ Plaintiff has provided no evidence establishing that defendant was legally or contractually obligated to provide either supplemental income or corporate benefits while plaintiff was disabled and receiving workmen's compensation. The compensation law is an injured employee's exclusive remedy for injuries defined by 77 P.S. § 411. 77 P.S. § 481. To require defendant to pay wages or fringe benefits to an employee physically unable to work would make defendant an involuntary workmen's compensation carrier providing benefits not required by statute or contract. Plaintiff's medical expenses are not recoverable and since his alleged pain and suffering was entirely distress over lost income and benefits (Tr. at 38, 40–41, 58–59 and 61–62), those damages are also not recoverable. The absence of recoverable damages entitles the defendant to judgment notwithstanding the verdict.

## V. Evidence of Retaliation

■ Defendant contends there is *no* evidence that it retaliated against plaintiff. Plaintiff proved only that:

(1) His alleged discharge occurred after plaintiff filed for workmen's compensation the second time. (Tr. at 29–33); and

(2) The workmen's compensation carrier began steps to terminate plaintiff's compensation benefits after plaintiff refused an October, 1984 offer of a light duty job of which defendant had informed the carrier. (Tr. at 55–56; P.Ex. 2 and 7).

But neither this nor any other evidence of record constitutes sufficient evidence to sustain the jury's finding that defendant retaliated against plaintiff; defendant is entitled to a judgment notwithstanding the verdict on retaliatory discharge.

The fact that the discharge occurred after plaintiff filed for benefits does not constitute evidence of retaliation based on the *post hoc ergo propter hoc* reasoning. *See Railway Labor Executives Ass'n. v. Dole,* 760 F.2d 1021, 1023 (9th Cir.1985); *Taylor v. Meirick,* 712 F.2d 1112, 1120 (7th Cir. 1983); *Bussman Manufacturing Co. v. N.L.R.B.,* 111 F.2d 783 787 (8th Cir.1940). If this constituted evidence sufficient to go to a jury on the retaliation issue, then any employee receiving workmens' compensation could file a wrongful discharge action when his or her employer ceased paying wages.

■ An employee who is no longer disabled is not entitled to continue receiving workmen's compensation benefits. 77 P.S. § 511 (total disability benefits); 77 P.S. § 512 (partial disability benefits). Defendant and the carrier had a right to seek termination of plaintiff's benefits when he refused work he was physically able to do. To treat this as evidence of retaliatory motive would enable any employee claiming compensation benefits and wrongfully refusing to work to prevail before a jury on a wrongful discharge claim. The fact that an employer stops payment of wages when a disabled employee receives compensation benefits and then seeks termination of those compensation benefits when the employee is physically able to return to work but refuses to do so is not evidence of retaliation.

All other relevant evidence presented supports the conclusion that defendant did not act out of any retaliatory motive. Plaintiff received his full salary (albeit by mistake) after he first went on compensation. (Tr. at 49). After the error was discovered, defendant informed plaintiff that it would supplement his income, even though it had no legal or contractual obligation to do so. (Tr. at 24–25, 30–32, 47–48, 73–74 and 79–80). Plaintiff was not required to repay the erroneous payments immediately but was allowed to make re-

payment weekly by deduction of supplementary payments that would otherwise have been made. (Tr. at 25). Defendant offered plaintiff light duty jobs in February and October, 1984 (Tr. at 35–36, 49–51 and 75), as well as the dispatcher job he temporarily held in August, 1983. (Tr. at 28–30). Without weighing credibility and giving plaintiff the benefit of all reasonable inferences, there is no evidence of retaliation by defendant and the only reasonable conclusion is that defendant did not retaliate against plaintiff; this entitles defendant to a judgment notwithstanding the verdict.

## VI. Specific Items of Damage

### A. *Medical Expenses*

Plaintiff has failed to prove that he would not have incurred these medical expenses if his corporate benefits had not been terminated. Plaintiff testified that these bills were incurred and not covered by any other insurance (Tr. at 35–40), but the coverage of his prior group insurance and whether any amount was deductible was not proved. A jury award based only on conjecture must be set aside. *See Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 851 (3d Cir.1967). *See also Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245, 1249 n. 5 (5th Cir.1985). *Cf. Woods v. United States*, 724 F.2d 1444, 1451–52 (9th Cir.1984) (affirming summary judgment); *Carlson v. Amer. Safety Equipment Corp.*, 528 F.2d 384, 386 (1st Cir.1976) (directed verdict affirmed).

### B. *Pain and Suffering*

Defendant contends that: [9]

(1) Plaintiff was barred from claiming such damages by his failure to plead them;

(2) Damages for pain and suffering are not recoverable in a wrongful discharge case in Pennsylvania;

(3) Plaintiff cannot recover for pain and suffering caused by lack of income where plaintiff could prove no actionable loss of income;

(4) The jury's finding that plaintiff was caused pain and suffering by retaliatory conduct of defendant was against the clear weight of the evidence; and

(5) The jury's award of $40,000.00 for pain and suffering was grossly excessive.

Plaintiff waived any claim to damages for pain and suffering prior to the trial of this case. Plaintiff's "Amended Amended Complaint" on which this action was tried specifically claimed only monetary losses not emotional damages. When plaintiff filed his pretrial memorandum, he did not claim emotional damages. When the court ordered plaintiff to submit a statement of his claimed compensatory damages, plaintiff again did not mention pain or suffering. The court ruled in advance of trial that in accordance with Local Rule 21, plaintiff was limited to those damages claimed with specificity in the statement: lost wages (minus workmen's compensation and unrecouped overpayment of salary) and medical expenses.

On the second day of trial, the court erroneously allowed plaintiff to present evidence of emotional damages over defendant's objections. (Tr. at 19–22, 40 and 46). Although defendant did not clearly object to the court's special interrogatories, and the jury instructions submitted by plaintiff (Tr. at 88–91), it requested a directed verdict for defendant. (Tr. at 91). Defendant never waived its objection to plaintiff's recovery on the claim for pain and suffering. Defendant is entitled to a judgment notwithstanding the verdict on the damages for pain and suffering as well as for medical expenses.

## VII. New Trial

 The district court may set aside a verdict as contrary to the preponderance

---

**9.** The court has summarized and consolidated a larger number of arguments made by defendant.

of the evidence even though a judgment notwithstanding the verdict would not be justified. *DePascale v. Penn R. Co.,* 180 F.2d 825 (3d Cir.1950). A motion for a new trial may invoke the court's discretion on the grounds, *inter alia,* that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair to the moving party. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). A district court may grant a new trial if required to prevent injustice or to correct a verdict that was against the weight of the evidence. *American Bearing Co. v. Litton Industries, Inc.,* 729 F.2d 943, 948 (3d Cir.), *cert. denied,* 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984). The authority to grant a new trial rests in the sound discretion of the district court, *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam), but if the judge is convinced that there has been a miscarriage of justice, then it is his or her duty to set the verdict aside. *Magee v. General Motors Corp.,* 213 F.2d 899, 900 (3d Cir.1954).

■ The jury's verdict that plaintiff was terminated was contrary to the clear weight of the evidence. Mr. Cox did not tell plaintiff that he would be fired if he failed to return to work. Mr. Cox did tell plaintiff that he would be removed from the payroll so that his benefits would cease in 90 days; this was required by the group insurance contract. (Tr. at 32–33 and 75). It is uncontradicted that the "Dear Former Employee" letter was sent to all employees who lost their group insurance benefits for whatever reason. (Tr. at 85–86). Plaintiff failed to identify the representative of defendant who told plaintiff he had been terminated as of December 8, 1983. (Tr. at 34).

Mr. Cox informed plaintiff by letter shortly after their conversation of early September, 1983, that plaintiff could return to work when he was physically qualified. (Tr. at 46–47). Plaintiff was repeatedly offered light duty jobs by defendant (Tr. at 28–30, 34–35, 49–51 and 75). Plaintiff is still carried on defendant's corporate records as an inactive employee (Tr. at 72) and at time of trial could still return to his former position at any time he was physically qualified. (Tr. at 75).

Defendant had no legal or contractual obligation to provide plaintiff with the equivalent of his regular salary by supplementing his workmen's compensation benefits, but it did so voluntarily. (Tr. at 25, 30–32 and 47–48). (*See also* Tr. at 73–74 and 79–80). The clear weight of the evidence indicates that plaintiff was never discharged by defendant at all, much less for any retaliatory reason; this requires that a new trial be granted. *Cf. Maley v. John Hancock Mutual Life Ins. Co.,* 609 F.Supp. 621 (E.D.Pa.1985) (judgment for defendant on wrongful discharge claim because plaintiff was not discharged).

The jury's finding that plaintiff suffered some emotional distress is not against the clear weight of the evidence. However, the only emotional distress for which plaintiff could possibly recover is the distress he suffered after he concluded he was fired in January, 1984, and before he chose not to accept the offer of light duty jobs in February, 1984; no other distress would be proximately caused by the discharge. Assuming that emotional damages were recoverable, plaintiff's evidence of pain and suffering was not sufficiently particularized to the period after plaintiff was purportedly fired and before plaintiff refused to accept the light duty jobs he was offered. (Tr. at 38, 40–41, 58–59, 61–62). If pain and suffering damages are recoverable here, the court would order a new trial on damages to establish them for the relevant period.

■ Furthermore, in view of the testimony on pain and suffering, the amount of the jury's verdict was so excessive, it shocks the court's conscience; this also would necessitate a new trial on damages. *See Draper v. Erie R. Co.,* 285 F.2d 255, 256 (3d Cir.1960). *See also T.D.S. Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520 (11th Cir.1985); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.), *reh'g*

*denied,* 765 F.2d 154 (11th Cir.1985); *McKinnon v. City of Berwyn,* 750 F.2d 1383 (7th Cir.1984); *Pearsall v. Emhart Industries, Inc.,* 599 F.Supp. 207 (E.D.Pa. 1984); *Levin v. Weissman,* 594 F.Supp. 322 (E.D.Pa.1984). *Cf. Draper v. Airco, Inc.,* 580 F.2d 91, 97 (3d Cir.1978) (prejudicial comments of plaintiff's counsel which affected liability verdict require new trial on liability and damages).

## SUMMARY

Defendant's motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, was timely filed. The grounds asserted in the motion were raised by defendant's motions for a directed verdict at the close of plaintiff's case and at the close of the evidence.

Pennsylvania law provides a cause of action in tort for wrongful discharge of an at-will employee in violation of a clear mandate of public policy, where that employee is not otherwise protected by statute or contract. The exclusive remedy provisions of the Pennsylvania workmen's compensation scheme do not bar a wrongful discharge claim brought on the theory that the employer retaliated against the employee for filing of a workmen's compensation claim.

Defendant is entitled to judgment notwithstanding the verdict for these reasons:

(1) Plaintiff has not claimed any damages for which he can recover.

(a) The medical expenses claimed are barred because:

(i) They were incurred after plaintiff wrongfully refused to accept defendant's offer of light duty work in February, 1984 (and thus barred both because not proximately caused by defendant and for failure to mitigate damages); and,

(ii) Plaintiff presented no competent evidence that he would not have had to pay these sums even if his corporate benefits had not been terminated.

(b) Plaintiff's claim for pain and suffering is barred because he had abandoned this claim before trial and the court ruled that plaintiff would be limited to damages he claimed with specificity.

(2) Plaintiff claims he could not perform his dock foreman job at any time from his alleged firing until some weeks before trial. This bars all recovery because defendant had no obligation to pay plaintiff wages or provide other benefits while plaintiff was disabled and covered by workmen's compensation. Therefore, plaintiff cannot claim either medical expenses or damages for pain and suffering caused by distress over lost wages and benefits; these were his only asserted items of damages. (If plaintiff could work, recovery is also largely barred by his refusal to do so.)

(3) Plaintiff produced no evidence whatsoever that his purported firing was motivated by purposes of retaliation. Without evidence of retaliation he cannot recover.

In the event that defendant is not entitled to judgment notwithstanding the verdict, defendant is granted a new trial for the following independent reasons:

(1) The jury's finding that plaintiff was fired was against the clear weight of the evidence.

(2) The jury's finding of defendant's retaliatory motive was against the clear weight of evidence.

(3) If the claimed medical expenses are recoverable, a new trial would be required on whether plaintiff would have incurred them if his benefits were not terminated.

(4) Because plaintiff wrongfully refused to take the light duty jobs offered in February, 1984, a new trial is required to establish plaintiff's pain and suffering proximately caused after his alleged wrongful discharge *until* he turned those jobs down. If the other reasons for new trial were not present, this would be grounds for a new trial on damages only.

(5) A new trial on damages is required because the jury's award for pain and suffering is sufficiently excessive to shock the conscience of the court.

An appropriate Order follows.